United States Court of Appeals
Fifth Circuit

**F I L E D**

**April 12, 2005**

Charles R. Fulbruge III
Clerk

**UNITED STATES COURT OF APPEALS
FOR THE FIFTH CIRCUIT**

No. 04-10317

IVOR KEELAN and DAVID SULLIVAN,

Plaintiffs-Appellants,

VERSUS

MAJESCO SOFTWARE, INC.,

Defendant-Appellee.

Appeal from the United States District Court
For the Northern District of Texas

Before REAVLEY, DeMOSS, and PRADO, Circuit Judges.

DeMOSS, Circuit Judge:

Plaintiffs-Appellants Ivor Keelan ("Keelan") and David Sullivan ("Sullivan") (together, "Appellants") appeal from the district court's granting of summary judgment in favor of Defendant-Appellee Majesco Software, Inc. ("Majesco" or the "company") in Appellants' Title VII national origin employment discrimination case. For the following reasons, we AFFIRM the district court's order.

**BACKGROUND**

Majesco is a U.S. wholly owned subsidiary of Mastek Ltd. ("Mastek"). Majesco has an office in Irving, Texas. Mastek was

founded in 1982; is headquartered in Bombay, India; and is publicly traded on the Bombay Stock Exchange. Mastek's business is outsourcing software/IT solutions and technicians for its business customers. Majesco is one of several wholly owned international subsidiaries of Mastek. Majesco sells Mastek's IT products and services to its customers based locally in the United States.

Keelan, a citizen of the United Kingdom, began working as a regional sales director for Majesco on or about August 7, 2000, in the Irving office. He was hired as an employee-at-will, with a base salary of $110,000, plus a commission structure. He was terminated in late November 2001 for nonproduction. A female Canadian national was offered his position but did not accept it.

Sullivan, a U.S. citizen born in El Paso, applied to work at Majesco in early 2001. Majesco president and Indian national Atul Vohra ("Vohra") (former marketing director for Mastek) was one of Sullivan's interviewers. Sullivan began working as a director of alliances for Majesco, as an employee-at-will, on or about March 1, 2001, in the Irving office with a base salary of $120,000, plus a commission structure. Sullivan signed an employee confidentiality and inventions agreement and an IRS W-4 withholding certificate with another software/IT company, AppWorx Corp. ("AppWorx"), on June 20, 2001. Sullivan took an extended leave from Majesco the first week of July 2001. He submitted his letter of resignation dated July 26, 2001. Sullivan's W-2s from 2001 indicate he earned more at AppWorx in the five months he worked there than in the five

2

months he worked for Majesco.

During his first four months on the job, Keelan generated no sales. His then-supervisor Gary Hart ("Hart"), a U.S. national, counseled Keelan concerning his sales performance. Keelan made three sales between February and April 2001. He made no sales after that. Sullivan's initial supervisor was also Hart. Sullivan produced no sales while at Majesco. Both Keelan and Sullivan allege that their sales performances were hindered and obstructed at Majesco due to the fact they are non-Indian. Appellants also contend Majesco's inadequate marking materials and website hindered their sales performance.

Keelan said he encountered staffing problems because when no technician employed by Majesco was available for projects, Majesco only brought in Mastek's Indian technicians on work visas and would not staff projects with local non-Indian hires. Keelan stated one time he lost repeat business because the Indian workers' visas expired and they left in the middle of a project.

Sullivan said he encountered similar staffing problems. Sullivan stated he was told that the company would not staff one of his projects because it could not get the required people from India. Sullivan stated a pattern developed where sales brought to the table by non-Indians probably were not going to be successful.

Another non-Indian Majesco salesperson, Jennifer Walsh ("Walsh"), based out of New Jersey, also testified to similar staffing problems. When Walsh asked management why the company

3

would not use local people, she stated she was told that "Americans need too much handholding." Walsh was terminated in November 2001 for nonproduction.

Appellants provided other evidence alleging discrimination. Keelan stated that Vohra (then marketing director for Mastek) announced at a sales meeting held in India in November 2000 that he could foresee a time when Mastek would be a totally Indian company. On April 1, 2001, Vohra was appointed president of Majesco. Shortly after Vohra became president, Hart resigned and was replaced by Lokesh Bhagwat, an Indian. Keelan stated that in April 2001, immediately prior to Hart's leaving, he asked Hart if the company had a policy of forcing the Americans out and that Hart replied, "Is there a document out there somewhere that states that, no; is it practice, of course it is." Appellants also complained about their working environment, including the lack of windows, the small size of their cubicles, and Majesco's requirement that they work from the office instead of home.

Yvette Winfrey ("Winfrey"), a non-Indian, was the assistant human resources director for Majesco. Winfrey testified that both Keelan and Sullivan complained to her about discrimination at Majesco. Keelan said Winfrey directed him to the EEOC, but that he had not yet gone to the EEOC at the time of his termination in November 2001. Keelan and Sullivan also complained to P.N. Prasad ("Prasad"), an Indian Majesco executive, about what they perceived to be discrimination against non-Indians. Keelan said Prasad also

4

stated that "Americans have never worked out" at the company. Sullivan spoke to Ketan Mehta ("Mehta"), Majesco's CEO and an Indian, about the apparent discrimination; Mehta's response was, "I can see how you would feel that way."

Majesco alleges it fell upon hard financial times beginning in fiscal year 2000. The loss of revenues in fiscal year 2001 was almost $20 million, and the company suffered a net loss of over $1.4 million. Because of this, on July 16, 2001, Majesco announced a new pay plan. This plan consisted of an across-the-board pay cut: all rank-and-file employees earning more than $60,000 per year received a ten percent pay cut, with senior management receiving an even larger decrease. The plan also modified the commission structure across the board for salesmen. Salaries were changed to require draws against commission. For example, if a commission employee had a $75,000 salary and earned $100,000 in commission, he would receive the difference of only $25,000 in commission. The plan also specifically excluded commissions on projects over $5 million. Appellants claim the plan gave Majesco discretion to divide commissions among salesmen as management saw fit and, in some instances, not even pay commissions, and thus would be a vehicle for favoritism and discrimination.

Appellants filed charges of national origin discrimination with the EEOC. They then filed this action against Majesco in district court on August 6, 2002, alleging discrimination in the terms and conditions of their employment and in Keelan's

5

termination and Sullivan's constructive discharge.  The court rejected Appellants' urging that it analyze their case under the mixed-motive theory.  The court determined this was a pretext case under *McDonnell Douglas Corp. v. Green*, 411 U.S. 782 (1973).[1]  With regard to Appellants' terms and conditions claims, the court found that the evidence did not support a *prima facie* case; that is, nothing showed Appellants were denied any compensation due them or that Majesco treated similarly situated Indian employees better.  As to Keelan's discharge claim, the court found he did not meet his *prima facie* case because nothing showed that similarly situated Indian salesmen were treated more favorably than he; that is, that

---

[1]We agree that the *McDonnell Douglas* burden-shifting analysis applies to Appellants' employment discrimination claims:

> As the Supreme Court reaffirmed in *Reeves* [*v. Sanderson Plumbing Products, Inc.*, 530 U.S. 133 (2000)], "*McDonnell Douglas* and subsequent decisions have 'established an allocation of the burden of production and an order for the presentation of proof,'" whereby a "plaintiff must [first] establish a prima facie case of discrimination. [After doing so,] [t]he burden [of production] shift[s] to [the defendant] to 'produce evidence that the plaintiff was rejected ... for a legitimate, nondiscriminatory reason.'"  *Id.* at [142].  If the defendant is able to produce a legitimate reason, then the presumption of discrimination vanishes.  However, because the burden of persuasion "'remains at all times with the plaintiff,'" the plaintiff is "afforded the opportunity [to demonstrate that an issue of material fact exists and] that the legitimate reasons offered by the defendant were not its true reasons, but were a pretext for discrimination."  *Id.* [at 143.]

*Okoye v. Univ. of Tex. Houston Health Sci. Ctr.*, 245 F.3d 507, 512 (5th Cir. 2001) (alterations in original, except in citations).

6

they were not also counseled and then terminated for poor sales performance. The court stated that even if Keelan had met his *prima facie* case, Majesco rebutted with a legitimate nondiscriminatory reason for his termination, and "stray remark" evidence did not raise an issue of pretext. As to Sullivan's constructive discharge claim, the court found he did not raise a genuine issue of fact on constructive discharge because he was not subjected to objectively intolerable working conditions and because he left Majesco for what he perceived to be a better job. The district court granted summary judgment to Majesco and dismissed Appellants' claims. Appellants timely appealed Keelan's discharge claim and Sullivan's constructive discharge claim.

## DISCUSSION

This Court reviews a district court's grant of summary judgment *de novo*, applying the same standards as the district court. **Patrick v. Ridge**, 394 F.3d 311, 315 (5th Cir. 2004). Under Federal Rule of Civil Procedure 56(c), summary judgment is proper when the "pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law." FED. R. CIV. P. 56(c); *see* **Celotex Corp. v. Catrett**, 477 U.S. 317, 322-23 (1986); **Anderson v. Liberty Lobby, Inc.**, 477 U.S. 242, 251-52 (1986). When making its determination, the court must draw all

7

justifiable inferences in favor of the nonmovant. ***Bodenheimer v. PPG Indus., Inc.***, 5 F.3d 955, 956 (5th Cir. 1993).

**I.     Whether the district court erred by requiring that Appellants provide evidence of similarly situated Indian employees receiving preferential treatment to prove up their *prima facie* case of discrimination.**

On appeal, Appellants argue that the district court applied an erroneous standard under ***McDonnell Douglas*** by deciding that only one method of proof would allow them to meet the essential discrimination element of their *prima facie* case – showing that Majesco treated similarly situated Indians employees differently than non-Indian employees. Appellants maintain the utilization of this exclusive approach to prove a *prima facie* case is contrary to Supreme Court and Fifth Circuit caselaw, which indicates there is no single route required to establish a *prima facie* case. *See, e.g.,* ***McDonnell Douglas***, 411 U.S. at 802 n.13; ***Thornbrough v. Columbus & Greenville R.R. Co.***, 760 F.2d 633, 641 & n.10 (5th Cir. 1985), *abrogated on other grounds*, ***St. Mary's Honor Ctr. v. Hicks***, 509 U.S. 502 (1993).

Appellants agree that the similarly situated type of proof the court required here can be helpful to prove up a *prima facie* case, but only where the company involved has several similarly situated employees. Appellants maintain that each of their jobs was unique: Sullivan was the only director of alliances, and Keelan was the only Majesco salesman in charge of the central U.S. region.

8

Appellants argue that because realistic comparisons cannot be made, they instead relied on other evidence.

Majesco insists that Appellants did not properly challenge the district court's formulation of the **McDonnell Douglas** *prima facie* case in the district court. Majesco argues its summary judgment motion put Appellants on notice that Majesco was seeking summary judgment because: (1) Appellants failed to establish that similarly situated persons had been treated differently in their terms and conditions of employment, (2) Keelan failed to identify a similarly situated person treated differently as to his discharge, and (3) Keelan failed to raise a genuine fact issue on pretext as to his discharge. Majesco maintains even with two opportunities (response to summary judgment and permissive sur-reply brief), Appellants never took issue with Majesco's statement of the applicable elements of the **McDonnell Douglas** *prima facie* case. Majesco insists Appellants said nothing about the lack of similarly situated persons outside their class. Instead, Majesco argues, Appellants only continued to argue that **Desert Palace, Inc. v. Costa**, 539 U.S. 90 (2003), changed the landscape of Title VII law by replacing **McDonnell Douglas** such that the granting of summary judgment in Title VII cases would be severely limited. However, Majesco contends this Court recently affirmed the **McDonnell Douglas** formulation as to the fourth element of the *prima facie* case. *See* **Bryan v. McKinsey & Co., Inc.**, 375 F.3d 358, 360-

9

61 (5th Cir. 2004) (affirming summary judgment against black plaintiff where record showed white associate principals also terminated).

The district court used the following formulation of the *McDonnell Douglas* *prima facie* case: plaintiffs must show (1) they are members of a protected class; (2) they were qualified for their positions; (3) they suffered an adverse employment action; and (4) others outside the class who were similarly situated were treated more favorably than they were treated. *See* ***Urbano v. Cont'l Airlines, Inc.***, 138 F.3d 204, 206 (5th Cir. 1998).

It is well settled in this Circuit that the scope of appellate review on a summary judgment order is limited to matters presented to the district court. ***Keenan v. Tejeda***, 290 F.3d 252, 262 (5th Cir. 2002); ***Frank C. Bailey Enters., Inc. v. Cargill, Inc.***, 582 F.2d 333, 334 (5th Cir. 1978). "If a party fails to assert a legal reason why summary judgment should not be granted, that ground is waived and cannot be considered or raised on appeal." ***Keenan***, 290 F.3d at 262 (internal quotation marks and citation omitted). If a party wishes to preserve an argument for appeal, the party "must press and not merely intimate the argument during the proceedings before the district court." ***New York Life Ins. Co. v. Brown***, 84 F.3d 137, 141 n.4 (5th Cir. 1996) (quoting ***FDIC v. Mijalis***, 15 F.3d 1314, 1327 (5th Cir. 1994)). An argument must be raised "to such a degree that the district court has an opportunity to rule on it."

10

*Id.*

We note "[p]rior case law has not consistently applied Title VII's burden-shifting framework to the question of whether a similarly-situated employee outside the plaintiff's protected class was treated more favorably." *Nieto v. L&H Packing Co.*, 108 F.3d 621, 623 n.5 (5th Cir. 1997). However, based upon our careful review of the record, we agree with Majesco that Appellants did not properly raise in the district court the argument that showing similarly situated employees were more favorably treated to meet the fourth element of *McDonnell Douglas* is not required to prove up a *prima facie* case of discrimination. While Appellants objected that their case should be treated under a mixed-motive theory per *Desert Palace*, they did not object to the similarly situated disparate treatment formulation of the fourth element of the *prima facie* case. Because Appellants did not sufficiently object below, the district court did not have any opportunity to rule on their argument; Appellants' legal argument on formulation is thus waived. *See Keenan*, 290 F.3d at 262; *Brown*, 84 F.3d at 141 n.4. We cannot address this point of error. *Keenan*, 290 F.3d at 262.

**II. Whether the district court erred by not analyzing Appellants' case under the mixed-motive theory.**

Appellants do not extensively brief the argument that the district court should have evaluated their evidence under *Desert Palace*. Appellants merely insist that "the Supreme Court did not

say what impact *Desert Palace* would have on *McDonnell Douglas* [because] the result is so obvious it is likely the Court felt no need to explain" – that result being summary judgment is almost never proper. Majesco responds that under any interpretation of *Desert Palace*, Appellants still must demonstrate a *prima facie* case of discrimination, *see Rachid v. Jack In The Box, Inc.*, 376 F.3d 305, 312 (5th Cir. 2004), and they failed to do so here.

Under the mixed-motive paradigm, a plaintiff need only show that the protected characteristic was a "motivating factor for any employment practice, even though other factors also motivated the practice." 42 U.S.C. § 2000e-2(m). In *Desert Palace*, the Supreme Court explained: "In order to obtain an instruction under § 2000e-2(m), a plaintiff need only present sufficient evidence for a reasonable jury to conclude, by a preponderance of the evidence, that 'race, color, religion, sex, or national origin was a motivating factor for any employment practice.'" 539 U.S. at 101. *Desert Palace* thus answered a disputed question from *Price Waterhouse v. Hopkins*, 490 U.S. 228 (1989), clarifying that direct evidence of the "motivating factor" is not needed to shift the burden of proof to the employer to affirmatively show that it would have treated the plaintiff the same in the absence of the unlawful motivating factor; circumstantial evidence of the motivating factor can be enough. 539 U.S. at 99-101. *Desert Palace* had no effect on pretext cases under *McDonnell Douglas*. *See, e.g., Raytheon Co. v.*

12

*Hernandez*, 540 U.S. 44, 49 & n.3 (2003) (noting, in a case post-*Desert Palace*, the consistent use of the "familiar" *McDonnell Douglas* burden-shifting approach for disparate treatment cases).

This Circuit has adopted use of a "modified *McDonnell Douglas* approach" in cases where the mixed-motive analysis may apply. *See Rachid*, 376 F.3d at 312. After the plaintiff has met his four-element *prima facie* case and the defendant has responded with a legitimate nondiscriminatory reason for the adverse employment action:

> [T]he plaintiff must then offer sufficient evidence to create a genuine issue of material fact either (1) that the defendant's reason is not true, but is instead a pretext for discrimination (pretext alternative); or (2) that the defendant's reason, while true, is only one of the reasons for its conduct, and another motivating factor is the plaintiff's protected characteristic. (mixed-motive[s] alternative).

*Id.* (internal quotation marks and citations omitted). The question of pretext versus mixed-motive treatment is only reached after a plaintiff has met his *prima facie* showing under the modified *McDonnell Douglas* standard and the defendant has responded with a legitimate nondiscriminatory reason. *Id*. If the plaintiff demonstrates the protected characteristic was a motivating factor in the employment decision (meets the mixed-motive showing), which pursuant to *Desert Palace* may be achieved through circumstantial evidence, *Rachid*, 376 F.3d at 311-12, "it then falls to the defendant to prove that the same adverse employment decision would

13

have been made regardless of discriminatory animus. If the employer fails to carry this burden, plaintiff prevails." **Id.** at 312 (internal quotation marks and citation omitted). In **Rachid**, this Court determined that enough fact issues still remained at the summary judgment stage, after plaintiff had met his *prima facie* case and the employer had replied with a nondiscriminatory reason, such that Rachid's case could not be adequately determined to be either pretext or mixed-motive. **Id.** at 316.

Appellants desire that their case be analyzed under **Desert Palace**, which is a mixed-motive case, but they also erroneously argue that **Desert Palace** changed **McDonnell Douglas**, which governs disparate treatment cases premised on pretext. The district court acknowledged Appellants' request. However, the court denied such mixed-motive treatment primarily because it found "no evidence that Majesco had legitimate *and* illegitimate reasons for discharging Keelan."[2]

As discussed in sections III and IV below, both Keelan and Sullivan failed to raise sufficient evidence to support their *prima facie* cases of discrimination. Therefore, this case is distinguishable from **Rachid**, *see* 376 F.3d at 316, because here the

---

[2]The EEOC, as amicus, argues that regardless of whether Keelan can show pretext, his evidence raises a fact question as to whether his national origin was a motivating factor in his discharge. However, for the same reasons as discussed in section IV, even if Keelan could arguably meet his *prima facie* case, his evidence does not raise that fact question.

14

district court did not need to reach the question of whether Appellants created fact issues on either or both of pretext or mixed-motive. We thus find no error.

**III. Whether the district court erred by finding Sullivan had not shown constructive discharge to meet the adverse employment element of his *prima facie* case.**

Sullivan argues the district court incorrectly determined that he had not presented enough evidence to create a material fact issue on constructive discharge, which was the adverse employment action Sullivan alleged Majesco took against him. Sullivan protests the court's statement that he was not constructively discharged because he had not received a "significant change in benefits." Sullivan contends the detrimental impact of the new commission structure, coupled with Majesco's environment in which non-Indian-initiated sales were discouraged, indicated the kind of intolerable working conditions that would force one to resign. In addition, Sullivan argues the district court solely looked to the fact that he retained his job title, which is not part of the constructive discharge test, instead of considering how Sullivan had less potential to earn commissions under Majesco's new plan. *See **Pegram v. Honeywell, Inc.**,* 361 F.3d 272, 284 (5th Cir. 2004)(recognizing the disparity in a reassigned employee's potential incentive compensation as evidence of an adverse employment action).

Majesco responds that Sullivan failed to present any evidence

15

of intolerable working conditions that compelled his resignation. Majesco contends the evidence Sullivan did present – the new pay and compensation plan, being required to work from the office and from cubicles, inadequate marketing materials, and Majesco's business method of staffing projects with Mastek consultants – did not show discrimination or hostility because these policies and practices were neutrally applied.

This Court has explained:

> The general rule is that if the employer deliberately makes an employee's working conditions so intolerable that the employee is forced into an involuntary resignation, then the employer has encompassed a constructive discharge and is as liable for any illegal conduct involved therein as if it had formally discharged the aggrieved employee.

*Jurgens v. EEOC*, 903 F.2d 386, 390 (5th Cir. 1990) (citation omitted). Whether an employee would feel forced to resign is case-and fact-specific, but we consider the following factors relevant, singly or in combination:

> (1) [D]emotion; (2) reduction in salary; (3) reduction in job responsibilities; (4) reassignment to menial or degrading work; (5) reassignment to work under a younger [or less experienced/qualified] supervisor; (6) badgering, harassment, or humiliation by the employer calculated to encourage the employee's resignation; or (7) offers of early retirement [or continued employment on terms less favorable than the employee's former status].

*Haley v. Alliance Compressor LLC*, 391 F.3d 644, 649-50 (5th Cir. 2004) (citing *Brown v. Kinney Shoe Corp.*, 237 F.3d 556, 566 (5th Cir. 2001)) (alterations in original) (footnote omitted). The test

16

that Sullivan must meet is an objective, "reasonable employee" test:  whether a reasonable person in the plaintiff's shoes would have felt compelled to resign.  *Barrow v. New Orleans S.S. Ass'n*, 10 F.3d 292, 297 n.19 (5th Cir. 1994).  "Constructive discharge requires a greater degree of harassment than that required by a hostile environment claim."  *Brown*, 237 F.3d at 566.  Aggravating factors used to support constructive discharge include hostile working conditions or the employer's invidious intent to create or perpetuate the intolerable conditions compelling the resignation. *Jurgens*, 903 F.3d at 393 n.10.  "The resigning employee bears the burden to prove constructive discharge."  *Haley*, 391 F.3d at 650.

We agree with the district court that Sullivan did not meet his burden of showing constructive discharge.  To begin, we do not accept that the requirement to work from the office, a policy Majesco applied across the board, constitutes hostility or harassment.  Neither does having to work from a cubicle-type office space; all the nonsupervisor Majesco salespersons worked from the "Bullpen."  The testimony in the record also reflects that all Majesco salespersons – Indian and non-Indian – utilized the same marketing materials and website.  While Appellants speculate that the pay cut and change in commission structure would not be neutrally applied, nothing supports that this practice ever took place.  The evidence instead shows the blanket, neutral nature of the business decision made in light of Majesco's revenue decrease.

17

*See* **Jurgens**, 903 F.2d at 392-93 (affirming summary judgment for employer where white plaintiffs were demoted as part of a blanket, racially neutral reorganization).  Unlike the plaintiff in **Pegram**, who individually suffered a job transfer where less commission was possible, 361 F.3d at 283-84, the Majesco salespersons altogether faced the same potential commission loss under the new plan.  We find none of these working conditions objectively constitutes a "greater degree of harassment than that required by a hostile environment claim."  **Brown**, 237 F.3d at 566.

Sullivan also presents no, much less compelling, evidence that his job responsibilities were reduced or that he was assigned to menial work in spite of his job title remaining the same.  *See* **Brown v. Bunge Corp.**, 207 F.3d 776, 782-83 (5th Cir. 2000) (affirming summary judgment for employer where ADEA plaintiff suffered a demotion and fewer job responsibilities).  There is also no evidence that anyone at Majesco ever badgered Sullivan by asking him when he was going to quit. *See* **Stephens v. C.I.T. Group/Equip. Fin., Inc.**, 955 F.2d 1023, 1027-28 (5th Cir. 1992) (affirming a jury verdict on constructive discharge, where ADEA plaintiff had not only been demoted, but also faced significant reductions in salary and responsibilities, and was repeatedly questioned by his younger supervisor as to when he was going to quit).

Moreover, Sullivan accepted a higher-paying job with another software company *prior to* the implementation of the new

18

compensation and commission plan.  If Sullivan had, or perceived he would have, a grievance with the new compensation and commission plan, a reasonable employee would have waited to see just how his paycheck was practically affected before seeking out a potentially higher paying job and resigning.  *See Haley*, 391 F.3d at 652 (noting reasonable employee attempts resolution of employment concerns before quitting); *McKethan v. Texas Farm Bureau*, 996 F.2d 734, 741 (5th Cir. 1993) (same); *Bozé v. Branstetter*, 912 F.2d 801, 805 (5th Cir. 1990) (same).  The district court decided this issue correctly; Sullivan does not meet the adverse employment action prong of his *prima facie* case.

**IV.  Whether the district court erred in finding that Keelan had not met the discrimination element of his *prima facie* case under *McDonnell Douglas*.**

We now address whether Keelan has presented sufficient evidence to meet his *prima facie* case and show pretext as to his discharge.  The parties here only dispute the discrimination element of *McDonnell Douglas* – whether Keelan produced sufficient summary judgment evidence to raise a genuine issue of fact that similarly situated Indian salespersons were treated more favorably than he – and pretext.[3]  Keelan attempts to meet this *prima facie* element with various evidence.   Keelan first argues that Supreme

---

[3]This Court uses the same *McDonnell Douglas* standard employed by the district court.  *See Patrick v. Ridge*, 394 F.3d 311, 315 (5th Cir. 2004).

19

Court and this Court's caselaw indicate the importance of workforce statistical evidence in proving discrimination, which he contends the district court did not give proper weight to here.[4]  *See **Int'l Bhd. of Teamsters v. United States***, 431 U.S. 324, 339 (1977); ***Parson v. Kaiser Aluminum & Chem. Corp.***, 575 F.2d 1374, 1379-80 (5th Cir. 1978).  Moreover, Keelan argues his and Sullivan's testimony as well as that of Walsh brought the "cold numbers" of the pro-Indian Majesco statistics to life. *See **Teamsters***, 431 U.S. at 339.  Keelan insists that Majesco's plan to have an all-Indian workforce had an adverse impact on his ability to sell; and the court should not have made the finding that Keelan, and not Majesco, was the reason Keelan did not meet his sales goals. Keelan contends making this inference is not proper on summary judgment.  *See **United States v. Diebold, Inc.***, 369 U.S. 654, 655 (1962).

Keelan also argues that the district court improperly disregarded all of Appellants' evidence related to Majesco's executives' prejudicial mindset which favored Indians and disfavored non-Indians as "stray remarks."  Keelan argues this probative evidence indicated Majesco's intent to take the necessary steps to achieve an all-Indian workforce.  Keelan points not only to his removal from Majesco, but also to Sullivan's forced

---

[4]As part of their summary judgment evidence, Appellants submitted a list of Majesco employees as of August 2003, which indicated that 8 of 137 employees were non-Indian.

resignation and the termination of Walsh, as corroborating the plan. Keelan contends the various prejudicial statements by Majesco executives cannot be disregarded as stray remarks because they were outright admissions by persons controlling company decisions. *See Palasota v. Haggar Clothing Co.*, 342 F.3d 569, 578 (5th Cir. 2003).[5]

Majesco argues Appellants have waived any error in the district court's evidentiary determinations by not raising such objections in their opening brief. Majesco contends the court properly disregarded Appellants' evidence that was either hearsay, irrelevant, or unauthenticated. Majesco also informs this Court as to Appellants' improper briefing; that is, Appellants failed to cite to the record for many of their assertions. Majesco asserts

---

[5]We note *Palasota* is distinguishable. There, the jury found for the plaintiff on his ADEA claim, and the court then ruled for judgment as a matter of law for the employer. 342 F.3d 569, 573-74 (5th Cir. 2003). In that posture, "it is unnecessary to 'parse the evidence into discrete segments corresponding to the different stages' of the *McDonnell Douglas* framework." *Id.* at 574 (quoting *Scott v. Univ. of Miss.*, 148 F.3d 493, 504 (5th Cir. 1998)). Our review instead is for whether the plaintiff met his ultimate burden of proving that the employer terminated him because of age. *Id.* Thus, this Court in *Palasota* considered the anti-age remarks made, *in combination with* the establishment of a *prima facie* case and a fact issue as to the veracity of the employer's stated grounds for termination, as probative of discriminatory intent. *Id.* at 578. Moreover, there the jury had ruled for Palasota based on his theory of the case – "that Haggar sought to replace its largely older, male sales force with a younger female sales force." *Id.* at 575. Here, as explained in section I, Appellants waived objection to the similarly situated theory of the case advanced by Majesco and accepted by the district court. Appellants thus failed to properly advance any theory of the case based on Majesco's alleged plan to have an all-Indian workforce.

21

that as a matter of law, the district court was correct to grant summary judgment in this case because nothing supported the allegation that Indian employees were treated more favorably than Keelan and because in essence Keelan's argument is a challenge to Majesco's business model, not to any discriminatory treatment.

Based on our review of the summary judgment evidence, and keeping in mind that Keelan was constrained to produce evidence sufficient to raise a genuine fact dispute that similarly situated Indian salespersons were treated more favorably than he because Appellants did not properly object to this formulation below, we find that Keelan has failed to meet the discrimination prong of his *prima facie* case under the particular disparate treatment formulation of the fourth element of **McDonnell Douglas** employed by the district court. Considering the evidence in the light most favorable to Keelan, we do not find that Keelan presented any summary judgment evidence tending to show, or from which it can be inferred, that similarly situated Indian salespersons were treated more favorably.

"To establish a prima facie case in this manner, [Keelan] must show that [Indian] employees were treated differently under circumstances 'nearly identical' to his." **Mayberry v. Vought Aircraft Co.**, 55 F.3d 1086, 1090 (5th Cir. 1995) (citations omitted). First of all, nowhere in the record does Keelan identify by name any Indian salesperson in "nearly identical" circumstances

22

who received better treatment than he. Keelan instead insists there were no Majesco Indian employees similarly situated to him. However, the record reflects that both Indian and non-Indian salespersons were affected by the blanket pay and commission cuts. The record also specifically identifies two Indian salespersons who were discharged in January 2002 for the identical reason Majesco gave for Keelan's termination – nonproduction in sales. *See* **id.** (affirming summary judgment for employer where black plaintiff did not meet *prima facie* case on discrimination prong, noting that white employees had also been similarly disciplined for "scrapping parts"). Also, nothing in the record indicates that Indian salespersons, as opposed to non-Indian salespersons, did not encounter the same types of staffing and marketing issues complained of by Appellants.

Moreover, Appellants' statistical evidence indicating the majority Indian workforce at Majesco and the remarks pertaining to pro-Indian sentiment neither show nor can be reasonably inferred to show better *actual* treatment of Majesco's Indian salespersons in circumstances "nearly identical" to Keelan's. *See* **id.** Thus, the district court correctly found that Keelan had not met the discrimination element of the *prima facie* showing under **McDonnell Douglas**.

And even if this evidence could arguably be considered enough to support a *prima facie* case, "if the defendant has offered a

23

legitimate nondiscriminatory reason for its action, the presumption of discrimination derived from the plaintiff's prima facie case simply drops out of the picture and the ultimate question [is] discrimination *vel non*." **Mayberry v. Vought Aircraft Co.**, 55 F.3d 1086, 1090 (5th Cir. 1995) (alteration in original) (internal quotation marks and citations omitted). Here, Majesco met its burden of production by citing Keelan's poor sales performance; any presumption of discrimination vanishes. The record reflects that Keelan indeed made few sales; Keelan created no fact issue that Majesco's stated grounds for his termination were "unworthy of credence." *See* **Reeves**, 530 U.S. at 143; **Palasota**, 342 F.3d at 578.

Keelan's statistical evidence and pro-Indian remarks do not create a fact issue on pretext. Being a majority Indian company did not prevent Majesco from also firing Indians for nonperformance in sales. *See* **Nieto v. L&H Packing Co.**, 108 F.3d 621, 623 n.5 (5th Cir. 1997) (noting how evidence of more favorable treatment of similarly situated employees outside the class can be "especially relevant" to a showing of pretext). Also, Keelan does not allege and presents no evidence here that the Majesco personnel who made the remarks were involved in or influenced the decision to fire him or that those remarks were made in connection with his discharge. *See* **Rachid v. Jack In The Box**, 376 F.3d 305, 315-16 (5th Cir. 2004) (noting ageist comments continually made by person who decided to

fire plaintiff); *Scales v. Slater*, 181 F.3d 703, 712 (5th Cir. 1999) (discounting stray remarks not connected to an employment decision).

## CONCLUSION

Having carefully reviewed the record and the parties' respective briefing and arguments, and for the reasons set forth above, we conclude the district court was correct to grant Majesco's motion for summary judgment and dismiss Appellants' claims.  Therefore, we AFFIRM.

**AFFIRMED.**