United States Court of Appeals
Fifth Circuit

**F I L E D**

**April 28, 2006**

Charles R. Fulbruge III
Clerk

IN THE UNITED STATES COURT OF APPEALS
FOR THE FIFTH CIRCUIT

_____

No. 05-20010

_____

SAFWAT H. SHAKIR,

　　　　　Plaintiff-Appellant,


 v.

PRAIRIE VIEW A&M UNIVERSITY; TEXAS A&M UNIVERSITY

SYSTEM; STATE OF TEXAS,


　　　　　Defendants-Appellees.

---

Appeal from the United States District Court
for the Southern District of Texas
No. 4:4:03-cv-02445

---

Before KING, BARKSDALE and PRADO, Circuit Judges.

EDWARD C. PRADO, Circuit Judge:[*]

　　　After being turned down for promotion, Appellant Safwat H.

Shakir sued Appellees Prairie View A&M University ("Prairie View"

---

　　　[*] Pursuant to 5TH CIRCUIT RULE 47.5, the court has determined
that this opinion should not be published and is not precedent
except under the limited circumstances set forth in 5TH CIRCUIT
RULE 47.5.4.

1

or "the university"), the Texas A&M University System and the State of Texas (collectively, "appellees"), alleging race and national origin discrimination in violation of Title VII of the Civil Rights Act of 1964, 42 U.S.C. § 2000e. The district court granted appellees' motion for summary judgment, and Shakir appeals. For the reasons below, we AFFIRM.

## I. Factual and Procedural Background

Shakir, a white Egyptian national, has worked as an instructor in the Computer Science department at Prairie View since 1989. He holds a Ph.D. in Soil Ecology-Terrestrial Community Ecology, is the author of multiple articles and one book on agricultural subjects, has fifteen years of lab experience, and has conducted field research for the Egyptian government.

In February 2001, the Cooperative Agriculture Research Center ("CARC") at Prairie View created a new full-time, permanent research position, "Research Scientist (Agronomist)." It posted a position announcement, which called for a "Ph.D. in Agronomy, Soil Science, Plant Science, or closely related discipline [and a] proven track record of conducting greenhouse and field research, and in managing resources." CARC director Dr. Albert Parks testified that Prairie View sought a candidate who had performed field research. The announcement indicated that the review of applicants would continue until the position was filled.

Parks established a selection committee to review candidates. Each member scored the candidates according to four criteria: research, education, experience and knowledge, skills and ability. The scores were weighted and aggregated to into a point value, and candidates ranked accordingly.

Shakir applied for the agronomist position, as did Dr. Nathaniel Keys. Keys, who is black, has a Ph.D. in Horticulture/Entomology. He was employed by Prairie View as Program Leader in Agriculture and Natural Resources and the Project Director of the Small Farmer Outreach Training and Technical Assistance Project. Keys had experience working with farmers, participating in projects funded by outside grants and, for approximately five years, conducting lab research.

On July 24, 2001, Dr. Richard Griffin, the selection committee chair, sent a memorandum to Parks ranking the seven top candidates on a point scale. Keys ranked fourth, and Shakir was not on the list (he ranked nineteenth). Parks testified that the top three candidates either could not be reached or were no longer interested. Prairie View awarded the position to Keys. On November 19, 2001, the Prairie View Human Resources Department notified Shakir that he had not been awarded the position. Through February 2002, Shakir contested the decision through university channels. Several university inquiries determined that the committee selected the superior candidate.

On July 9, 2003, Shakir filed the present action; and, on

June 10, 2004, Prairie View moved for summary judgment.  The district court granted the motion, determining that Shakir failed to establish that Prairie View's proffered justification for failing to award the position to Shakir, that Keys was better qualified, was pretext.  Shakir appeals.

## II. Discussion

### A. Standard of Review

We review a district court's grant of summary judgment *de novo*.  Pegram v. Honeywell, Inc., 361 F.3d 272, 278 (5th Cir. 2004).  Summary judgment is appropriate if "the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law."  FED. R. CIV. P. 56(c); see also Celotex Corp. v. Catrett, 477 U.S. 317, 322 (1986).  An issue as to a material fact is "genuine" if the evidence would permit a reasonable jury to return a verdict for the non-moving party.  Roberson v. Alltel Info. Servs., 373 F.3d 647, 651 (5th Cir. 2004)(citing Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 248 (1986)).  The evidence must be construed in the light most favorable to the non-moving party and doubts resolved in their favor.  Id.

### B. Summary Judgment

McDonnell Douglas Corp. v. Green, 411 U.S. 792 (1973), and

4

its progeny establish a burden-shifting analysis to be applied to discrimination claims. Once a plaintiff makes out a *prima facie* case of discrimination under Title VII, he or she is entitled to a presumption of discrimination, which the defendant may rebut by presenting a legitimate nondiscriminatory reason for its actions. Shackelford v. Deloitte & Touche, LLP, 190 F.3d 398, 404 (5th Cir. 1999). If the defendant succeeds in rebutting the presumption, the plaintiff must establish that the defendant's proffered reason for its action is pretextual. Id. In "mixed-motive" cases, discussed infra, this court applies a modified version of the framework.

The district court determined that Shakir failed to establish that Prairie View's proffered legitimate nondiscriminatory reason for hiring Keys was pretextual.

### 1. Skewed Hiring Process

Shakir contends that an allegedly skewed hiring process establishes that Prairie View's justification for hiring Keys is a pretext for discrimination. He claims the process lacked credibility, rules were applied disparately in favor of Keys and the process was manipulated to favor Keys. Proof that an employer's justification is pretextual is enough to support survival of summary judgment on a discrimination claim. Reeves v. Sanderson Plumbing Prods., Inc., 530 U.S. 133, 148 (2000). However, in instances such as when "the plaintiff create[s] only

5

a weak issue of fact as to whether the employer's reason was untrue and there [i]s abundant and uncontroverted independent evidence that no discrimination ha[s] occurred," no rational factfinder can conclude the action is discriminatory.  Id.

Shakir first claims that the selection committee's alleged violation of its own rules render its justification unworthy of credence.  See Laxton v. Gap Inc., 333 F.3d 572, 578 (5th Cir. 2003)(stating that where employer's proffered reason is unworthy of credence, no further evidence of animus is required).  The committee choice of Keys over the second and third-ranked candidates, which appellees explain as the result of unavailability and lack of interest, does not make Prairie View's claim that Keys (#4) was better qualified than Shakir (#19) unworthy of credence.  Nor do the alleged procedural anomalies, which are little more than Shakir's disagreements with the committee's scoring or his observation that the committee members made immaterial addition errors in scoring.

Second, Shakir claims the hiring rules were disparately applied to favor Keys.  His contention that a deadline was violated is based on testimony that the hiring process was closed and then reopened.  Nothing indicates the presence of a deadline, and the position announcement indicated the search process would continue until the position was filled.  Shakir points to the racial composition of the committee as a violation of university policy calling for selection committees to be "appropriately

6

diverse." The district court found that this policy did not operate as a rule, and Shakir does not explain how the all-black committee operated in favor of Keys over Shakir in the context of a list of 26 candidates, the race of whom is unclear.

Shakir's third complaint about the hiring process is that it was manipulated to favor Keys. He claims the position announcement departed from an earlier position description form in order to emphasize field experience over research. Nothing save Shakir's bald assertions substantiates that any change was made in what the position required. In Price v. Federal Express Corp., a black Title VII plaintiff fit the actual letter of the job description better than a white candidate. 283 F.3d 715 (5th Cir. 2002). Because the white candidate chosen instead of the plaintiff had relevant skills and experience the employer found useful, we upheld summary judgment. Id. at 718-22. Shakir's case is no better.

## 2. Clearly Better Qualified

Shakir also claims that summary judgment in appellees' favor was inappropriate because he was clearly better qualified than Keys for the position of agronomist. A plaintiff may rebut a defendant's promoted employee's superior qualification justification for the failure to promote as pretext by establishing that he, the plaintiff, was "clearly better qualified" for the position. Manning v. Chevron Chem. Co., 332 F.3d 874, 882 (5th Cir. 2003); Deines v. Texas Dept. of Prot. &

7

<u>Regulatory Servs.</u>, 164 F.3d 277, 279-80 (5th Cir. 1999). However, "unless disparities in curricula vitae are so apparent as virtually to jump off the page and slap us in the face, we judges should be reluctant to substitute our views for those of individuals charged with the evaluation duty by virtue of their own years of experience and expertise in the field in question." <u>Odom v. Frank</u>, 3 F.3d 839, 847 (5th Cir. 1993).

Shakir's superiority is neither so acrobatic nor so pugnacious. He claims to have had more research and publishing experience than Keys, but the qualifications for the agronomist position were not so narrow.[1] Keys' record amply demonstrates his participation in a wide variety of agronomic projects, and both men had doctoral degrees in related fields and procured outside funding for their work. Remarks by Prairie View officials that Shakir was qualified do not resuscitate his argument. <u>See</u> <u>e.g.</u>, <u>Deines</u>, 164 F.3d at 279 (upholding summary judgment for defendant where person charged with hiring concluded plaintiff met minimum qualifications). His allegation of inaccuracies in Keys' curriculum vitae is simply unsupported. Taken together, Shakir's

---

[1] The position announcement reads: "[t]he ideal candidate will have experience in soils and natural resources management, including field crops, forages, irrigation systems, and land use management, a proven track record of productive outputs (publications, extramural funding, etc.), strong oral and written communications skills, a demonstrated affinity for strategic planning, resource management, and evidence of ability to be a team player."

8

arguments regarding superior qualifications fail to hurdle the high bar our precedent sets for such a claim.

## C. Mixed-Motive Analysis

Shakir claims that the district court improperly failed to apply the mixed-motive analysis for Title VII claims propounded in Price Waterhouse v. Hopkins, 490 U.S. 228 (1989).[2]  A plaintiff may plead the mixed-motive alternative using either direct or circumstantial evidence of animus.  Keelan v. Majesco Software, Inc., 407 F.3d 332, 340 (5th Cir. 2005).

The evidence Shakir presents in his pleadings is neither, and does not raise a material issue of fact as to whether Prairie View based its decision not to promote on his race or national origin.  His only substantiated allegations–that the decisionmakers were all black and that Griffin *may* have been the only one to evaluate Keys[3]–are categorically unlike the discriminatory comments and policies that have led us to conclude the presence of a material issue of fact and deny summary judgment in past cases.  See, e.g., Machinchick v. PB Power,

[2] The mixed-motive theory "comes into play where direct evidence of discrimination is presented, but the employer asserts that the same adverse employment decision would have been made regardless of discrimination."  Rachid v. Jack in the Box, Inc., 376 F.3d 305, 309 (5th Cir. 2004).

[3] The record is not clear as to whether all the committee members evaluated Keys, because Griffin's scoring sheet was the only one in Keys' file.  Shakir infers that only Griffin evaluated Keys, and appellees reply that Griffin consulted the other members.

Inc., 398 F.3d 345, 353-54 (5th Cir. 2005)(evidence of management's plan to hire a younger workforce, age stereotyping in the form of pejorative comments made about plaintiff's adaptability, retention of a younger worker where plaintiff fired and supervisor's question to plaintiff whether he planned to retire); Rachid, 376 F.3d at 305 (numerous ageist comments by the supervisor who terminated plaintiff); Bienkowski v. American Airlines, Inc., 851 F.2d 1503, 1506-07 (5th Cir. 1998) (managers commented that worker unable to adapt and should look "sharp" in order to apply for other job).

Shakir goes no further than imputing a large amount of general unfairness to Prairie View. We have cautioned that, while anti-discrimination law works to safeguard the integrity of the employment process with respect to rooting out animus, it is not a palliative for all employment ills. "Whether the employer's decision was the correct one, or the fair one, or the best one is not a question within the jury's province to decide." Deines, 164 F.3d at 281. These are the questions Shakir wishes to put before a jury, and there they cannot go.

### III. Conclusion

For the reasons above, the decision of the district court is AFFIRMED.

10