# IN THE UNITED STATES COURT OF APPEALS
## FOR THE FIFTH CIRCUIT

United States Court of Appeals
Fifth Circuit

**F I L E D**
August 2, 2013

No. 12-20678
Summary Calendar

Lyle W. Cayce
Clerk

CARLOS GLASKOX,

Plaintiff–Appellant,

v.

HARRIS COUNTY, TEXAS; KEN JONES,

Defendants–Appellees.

Appeal from the United States District Court
for the Southern District of Texas
USDC No. 4:11-CV-1699

Before HIGGINBOTHAM, OWEN, and SOUTHWICK, Circuit Judges.

PER CURIAM:[*]

Carlos Glaskox sued Harris County, Texas (Harris County) and Ken Jones (Constable Jones), a Harris County Constable, (collectively, Defendants) for discrimination on the basis of race in violation of 42 U.S.C. §§ 1981 and 1983. The district court granted Defendants summary judgment on all claims. Glaskox challenges only the grant of summary judgment to Harris County. We affirm.

---

[*] Pursuant to 5TH CIR. R. 47.5, the court has determined that this opinion should not be published and is not precedent except under the limited circumstances set forth in 5TH CIR. R. 47.5.4.

No. 12-20678

## I

Glaskox is a Caucasian male who was hired as a deputy for Precinct 3 of the Harris County Constable's Office in June 1998. Except for a brief period of employment with the Baytown City Marshal's Office, Glaskox remained in his position with Harris County until his termination on July 24, 2008. Glaskox's termination resulted from an incident that occurred in the Constable's Office on July 19, 2008. On that day, Glaskox entered the dispatch office, approached Carolina Puente, a female dispatcher, and interrupted Puente's conversation with Deputy Henry Williams to tell her that she "could have bigger [breasts]." Puente provided a signed, sworn statement concerning the incident to her supervisor, in which she described feeling "humiliated, embarrassed, and highly upset." This statement was then forwarded to Constable Jones, who initiated an investigation into the matter.

In the course of his investigation, Constable Jones confirmed with several employees, including Glaskox, that Glaskox had made the above comment. Constable Jones also determined that Glaskox's comment violated the Office's Sexual Harassment Policy, which states, in relevant part as follows:

> Sexual harassment may constitute: . . .
>
> Verbal abuse or kidding that is sexually oriented and considered unacceptable by another individual. This may include commenting about an individual's body or appearance where such comments go beyond mere courtesy, telling "dirty jokes" that are clearly unwanted and considered offensive by others, or any other tasteless, sexually oriented, comments, innuendoes or actions that offend others.

Moreover, the policy provides that "[a]ny employee who is determined after an investigation to have engaged in sexual harassment in violation of this policy will be subject to disciplinary actions up to and including termination of

2

No. 12-20678

employment." Consequently, Constable Jones terminated Glaskox's employment based on Glaskox's "inappropriate conduct . . . on July 19, 2008."

In March 2011, Glaskox filed an action in state court, which was removed to federal court. The parties consented to proceed before a magistrate judge for all purposes, including the entry of a final judgment. Glaskox alleged that Harris County and Constable Jones, in his official and individual capacities, discriminated against him in violation of §§ 1981 and 1983. Specifically, Glaskox asserted that he was treated differently from similarly situated employees who were African American. Defendants moved for summary judgment. The magistrate judge granted summary judgment to Constable Jones in his official and individual capacities because Glaskox could not maintain a § 1981 claim against him and to Harris County because it found that Glaskox had failed to raise a genuine issue of material fact that Harris County had discriminated against him. Glaskox challenges only the disposition of his claim against Harris County on appeal. After reviewing the record, we affirm.

## II

We review the grant of summary judgment de novo, applying the same standard as the district court.[1] Summary judgment is appropriate when "there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law."[2] A genuine issue of material fact exists when "the evidence is such that a reasonable jury could return a verdict for the nonmoving party."[3]

---

[1] *Pegram v. Honeywell, Inc.*, 361 F.3d 272, 278 (5th Cir. 2004).

[2] FED. R. CIV. P. 56(a).

[3] *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986).

### III

Section 1981 provides that "[a]ll persons within the jurisdiction of the United States shall have the same right in every State" to, *inter alia*, "make and enforce contracts."[4]   Thus, § 1981 "serves as a deterrent to employment discrimination and a means of punishing employers who discriminate on the basis of race."[5]  Claims that a municipality violated § 1981 must be brought under § 1983, which provides the remedial scheme to challenge state action.[6]

Employment discrimination claims bought under §§ 1981 and 1983 "are analyzed under the evidentiary framework applicable to claims arising under Title VII of the Civil Rights Act of 1964."[7]  Under that framework, a plaintiff must first establish a prima facie case of discrimination by showing evidence that he "(1) is a member of a protected class; (2) was qualified for the position; (3) was subject to an adverse employment action; and (4) . . . in the case of disparate treatment, . . . that other similarly situated employees were treated more favorably."[8]  If the plaintiff establishes a prima facie case, the burden then shifts to the defendant to "articulate a legitimate, nondiscriminatory reason" for the adverse employment decision.[9]  Once the defendant has done so, the burden shifts back to the plaintiff to show either (1) that the defendant's reason is a pretext for the real discriminatory purpose, or (2) "that the defendant's reason,

---

[4] 42 U.S.C. § 1981(a).

[5] *Carroll v. Gen. Accident Ins. Co. of Am.*, 891 F.2d 1174, 1176 (5th Cir. 1990).

[6] *Jett v. Dall. Indep. Sch. Dist.*, 491 U.S. 701, 735-36 (1989).

[7] *Lawrence v. Univ. of Tex. Med. Branch at Galveston*, 163 F.3d 309, 311 (5th Cir. 1999) (per curiam).

[8] *Bryan v. McKinsey & Co.*, 375 F.3d 358, 360 (5th Cir. 2004) (citing *Okoye v. Univ. of Tex. Hous. Health Sci. Ctr.*, 245 F.3d 507, 512 (5th Cir. 2001)).

[9] *Jackson v. Watkins*, 619 F.3d 463, 466 (5th Cir. 2010) (per curiam).

while true, is only one of the reasons for its conduct, and another motivating factor is the plaintiff's protected characteristic (mixed-motive[s] alternative)."[10]

Here, the magistrate judge found that Glaskox failed to establish his prima facie case. While the first three elements were undoubtedly met,[11] the magistrate judge held that Glaskox presented no genuine issue of material fact as to the fourth element—that Harris County treated similarly situated African-American employees more favorably. On appeal, Glaskox first argues that the magistrate judge applied an erroneous mode of analysis to the facts of his case. Alternatively, Glaskox asserts that there is a genuine issue of material fact whether similarly situated African-American employees were more favorably treated.

Glaskox presents an undeveloped argument that the magistrate judge erroneously analyzed the facts of his case. Interpreting his brief most charitably, Glaskox contends that "in light of the mix-motive nature of the facts," his case should not have been analyzed according to the traditional burden-shifting framework we apply to disparate treatment cases premised on pretext. Instead, Glaskox argues that the mixed-motive paradigm required him to show only that the protected characteristic was a motivating factor behind his termination. Glaskox concludes that the magistrate judge erred in finding that he had not established the fourth element of his prima facie case because mixed-motive cases do not require the plaintiff to establish a prima facie case. Harris

---

[10] *Black v. Pan Am. Labs.*, 646 F.3d 254, 259 (5th Cir. 2011) (alteration in original) (quoting *Rachid v. Jack in the Box, Inc.*, 376 F.3d 305, 312 (5th Cir. 2004)) (internal quotation marks omitted).

[11] It is settled that § 1981 can be invoked in cases involving "reverse discrimination," such as this claim by a Caucasian employee that he was treated differently from African-American employees. *McDonald v. Santa Fe Trail Transp. Co.*, 427 U.S. 273, 287 (1976). Furthermore, there is no dispute that Glaskox was "qualified" to be a deputy and that his termination was an "adverse employment action."

County counters that Glaskox failed to raise this objection before the magistrate judge and that this argument is thus waived.

"It is well settled in this Circuit that the scope of appellate review on a summary judgment order is limited to matters presented to the district court."[12] "If a party fails to assert a legal reason why summary judgment should not be granted, that ground is waived and cannot be considered or raised on appeal."[13] "An argument must be raised to such a degree that the district court has an opportunity to rule on it."[14]  After careful review of the record, we agree with Harris County that Glaskox did not properly raise this issue before the magistrate judge.  In its summary judgment motion, Harris County put Glaskox on notice that it was seeking summary judgment because Glaskox could not meet his burden of proving that "he and the deputies outside the protected class shared 'nearly identical' circumstances when the employer displayed preferential treatment."  In his response, Glaskox argued that these other employees were sufficiently similar to his case but never took issue with the mode of analysis. It is only now on appeal that Glaskox argues that a different, mixed-motive analysis would be more appropriate.  Accordingly, Glaskox's legal argument is waived.[15]

Even if we were to consider Glaskox's theory, however, his argument fails as a matter of law.  While mixed-motive cases are analyzed differently from disparate treatment cases premised on pretext, this distinction does not alter the

---

[12] *Keelan v. Majesco Software, Inc.*, 407 F.3d 332, 339 (5th Cir. 2005).

[13] *Keenan v. Tejeda*, 290 F.3d 252, 262 (5th Cir. 2002) (internal quotation marks omitted).

[14] *Keelan*, 407 F.3d at 339 (internal quotation marks omitted).

[15] *See id.* at 340 (holding that this court was prevented from considering appellants' objection to "the similarly situated disparate treatment formulation of the fourth element of the *prima facie* case" because they had failed to raise it before the district court).

traditional burden-shifting framework.[16]  In fact, "[t]he question of pretext versus mixed-motive treatment is only reached after a plaintiff has met his *prima facie* showing . . . and the defendant has responded with a legitimate nondiscriminatory reason."[17] Therefore, because the magistrate judge concluded that Glaskox never satisfied his prima facie burden, the judge appropriately did not reach the question of whether the facts of Glaskox's case constituted pretext, mixed-motives, or both.

Glaskox argues in the alternative that the magistrate judge erroneously held that Glaskox had failed to raise a genuine issue of material fact as to the fourth element of his prima facie case.  He contends that the five African-American employees he raised before the magistrate judge satisfied his burden of showing that similarly situated employees were more favorably treated.  These employees were (1) Charles Markcray, (2) Christopher Kerr, (3) Kelvin Dewayne Jason, (4) Joe Ross, and (5) Robert Wilson.  The magistrate judge, however, held that none of these employees were similarly situated.

To satisfy the fourth element of the prima facie case, a plaintiff "must show that . . . employees [who were not members of the plaintiff's protected class] were treated differently under circumstances nearly identical to his."[18] "The employment actions being compared will be deemed to have been taken under nearly identical circumstances when the employees being compared held the same job or responsibilities, shared the same supervisor or had their employment status determined by the same person, and have essentially

---

[16] *Id.* at 341.

[17] *Id.*

[18] *Turner v. Kan. City S. Ry. Co.*, 675 F.3d 887, 893 (5th Cir. 2012) (alterations in original) (quoting *Mayberry v. Vought Aircraft Co.*, 55 F.3d 1086, 1090 (5th Cir. 1995)) (internal quotation marks omitted).

comparable violation histories."[19]  Furthermore, "the plaintiff's conduct that drew the adverse employment decision must have been nearly identical to that of the proffered comparator who allegedly drew dissimilar employment decisions."[20]

We agree with the magistrate judge that Glaskox failed to create a genuine issue of material fact that similarly situated African-American employees were more favorably treated.  Of the five African-American employees Glaskox cites as comparators, only Markcray had a written complaint submitted against him for sexual harassment.  This incident occurred in 2004 and, just as in the instant case, it triggered an investigation.  However, Markcray resigned before the investigation could be completed.  Although Glaskox concedes that Markcray's resignation during the pendency of the investigation renders Markcray insufficiently similar to the instant case, Glaskox argues that another incident involving Markcray in 2002 did not trigger an investigation and therefore demonstrates disparate treatment.  But this 2002 incident involved a private citizen—not another employee of the Constable's Office—and therefore did not constitute a violation of the Office's Sexual Harassment Policy.  Because this distinction changes the nature of the violation at issue, Glaskox failed to show that Markcray was similarly situated with him.[21]

---

[19] *Id.* (quoting *Lee v. Kan. City S. Ry. Co.*, 574 F.3d 253, 260 (5th Cir. 2009)) (internal quotation marks omitted).

[20] *Id.* (quoting *Lee*, 574 F.3d at 260) (internal quotation marks omitted).

[21] *See id.* at 896 (holding employees were comparable in part because the comparator had "violated most of the same workplace rules that [the plaintiff] was found to have violated"); *Bryant v. Compass Grp. USA Inc.*, 413 F.3d 471, 478 (5th Cir. 2005) (denying a disparate treatment claim because an employee's theft from his employer was distinct from the plaintiff's theft from the employer's client); *Okoye v. Univ. of Tex. Hous. Health Sci. Ctr.*, 245 F.3d 507, 514 (5th Cir. 2001) (employees were not nearly identical to the plaintiff since their violations did not involve an alleged assault of a coworker); *Smith v. Wal-Mart Stores*, 891 F.2d 1177, 1180 (5th Cir. 1990) (per curiam) (an employee who violated a different company policy was not nearly identical).

Of the remaining four individuals, Kerr and Jason are the only other comparators whose conduct concerned sexually inappropriate acts. Kerr allegedly told another female dispatcher that "he knew she wanted his 10-1/2 inch [male organ]," but this dispatcher declined to file a written complaint despite being advised by her supervisor to do so. Although Glaskox argues that this distinction does not undermine the substantial similarities he shares with Kerr, the lack of a sexual harassment complaint meant that Constable Jones was unaware of the incident and had no basis from which to begin an investigation. Furthermore, Kerr was fired for failing to follow department policy on an unrelated matter. Accordingly, there is no showing that Kerr is similarly situated to Glaskox.[22]

Nor is Jason a sufficient comparator. First, the written complaints against him of sexual harassment were made by a high school student and thus were not alleged violations of the Office's Sexual Harassment Policy. The only other incident concerned a coworker's allegations that several deputies including Jason had "hit on her for sex." These allegations, however, were not made in a formal complaint but in the course of an internal affairs investigation into the female coworker. Moreover, Jason and the other deputies denied these allegations whereas in the instant case, Glaskox and other witnesses confirmed that he had acted in an inappropriate manner. Therefore, Jason's conduct was not "nearly identical" to that of Glaskox.[23]

Finally, the underlying complaints against Ross and Wilson did not involve other employees or alleged violations of the sexual harassment policy. As to Ross, the first two complaints against him accused him of being overly

---

[22] *See Bryant*, 413 F.3d at 478-79 (holding that "no reasonable jury could conclude that the two events [we]re nearly identical" where the employer relied on a police report—wherein the plaintiff had admitted to theft—to terminate the plaintiff whereas the similarly situated employee had "never admitted to the theft to the police or anyone else").

[23] *See Turner*, 675 F.3d at 893.

friendly to private female citizens by *helping* one with her groceries and asking the other out on a coffee date, and the third complaint concerned his use of Spanish instead of English to tell a woman to enter the courtroom where he worked as a bailiff. As to Wilson, the sole complaint against him was filed by a private female citizen who asserted that Wilson had tried to get her attention at a grocery store and later drove past her house on several occasions. As discussed above, the fact that these incidents did not involve other employees or concern the same type of violation at issue in the instant case renders these employees distinct for the purposes of Glaskox's discrimination claim.

In sum, Glaskox failed to create a genuine issue of material fact that other similarly situated employees were treated more favorably than he. Accordingly, we agree with the magistrate judge that Glaskox failed to establish his prima facie case for discrimination.

*        *        *

For the foregoing reasons, the judgment of the district court is AFFIRMED.