United States Court of Appeals
Fifth Circuit

**F I L E D**

**January 14, 2005**

Charles R. Fulbruge III
Clerk

IN THE UNITED STATES COURT OF APPEALS
FOR THE FIFTH CIRCUIT

No. 03-10695

Bess J Myers,

Plaintiff-Appellant,

versus

Crestone International LLC,

Defendant-Appellee.

--------------------
Appeals from the United States District Court
for the Northern District of Texas
USDC No. 3:01-CV-1736-K
--------------------

Before REAVLEY, WIENER, and BENAVIDES, Circuit Judges.

PER CURIAM:[*]

In this direct civil appeal, Bess J. Myers, Appellant, challenges the district court's summary judgment for Crestone International LLC ("Crestone"), Appellee. For the reasons that follow, we affirm.

**I. Background**

On February 3, 1998, Myers began working as Practice Manager

_____

[*] Pursuant to 5TH CIR. R. 47.5, the Court has determined that this opinion should not be published and is not precedent except under the limited circumstances set forth in 5TH CIR. R. 47.5.4.

1

in the Human Resources department of consulting company Crestone. Her job included recruiting, managing a group of consultants, selling Crestone's services, and coordinating marketing events. Crestone largely functions as a "virtual company" where its employees work from their home computers across the country. For this reason, interaction and communication between employees is basically limited to teleconferences, e-mails, and company retreats.

Over the course of her employment, Myers witnessed a number of incidents she deemed offensive. For instance, in the fall of 1998, while attending a company mixer, Myers came upon a number of male employees huddled around a laptop viewing pictures of naked women. This was brought to the attention of Human Resources division head Lee Martini and Vice President of Operations Sean McCormack. At another retreat, McCormack and Company Practice Leader Mark Ranta "mooned" Myers. She expressed her displeasure to McCormack, Ranta, Martini and Division Leader Jeff Sigelbaum. In general, Myers claims that Martini, McCormack, Supervisor Jeff Engel, and Supervisor Jon Commanday mocked her many concerns about Crestone's culture, referring to her as "Ms. EEOC" or the "EEO Police." Myers also recalls company officials referring to women in demeaning ways and charges that they perpetuated a "boys' club" atmosphere.

On September 21, 2000, Engel sent Myers "an overtly critical" e-mail. He sent her a second e-mail criticizing her

2

self-direction and initiative, on September 25, 2000.  On September 29, 2000, McCormack and Engel called Myers to tell her she was fired.  They pointed to a lack of initiative as the primary reason for her dismissal.  Crestone replaced Myers with two employees, a male and a female.

On September 4, 2001, Myers filed a complaint against Crestone in the U.S. District Court for the Northern District of Texas, Dallas Division.  She contended that Crestone's actions toward her violated Title VII of the Civil Rights Act of 1964 ("Title VII"), the Texas Commission on Human Rights Act ("TCHRA"), and the federal Equal Pay Act ("EPA").  Following discovery, the district court granted Crestone's summary judgment motion, finding "no genuine issues of material fact and [holding] that Crestone is entitled to judgment as a matter of law."

## II. Discussion

We review grants of summary judgment under Rule 56 *de novo*, applying the same standards the district court used.  *Am. Home Assurance Co. v. United Space Alliance, LLC*, 378 F.3d 482, 486 (5th Cir. 2004).

### A. Prohibited Discrimination Under Title VII

Myers argues that, by firing her, Crestone violated Title VII.  The law reads, in relevant part: "It shall be an unlawful employment practice for an employer . . . to discharge any individual . . . because of such individual's . . . sex . . . ."

3

42 U.S.C. § 2000e-2(a)(1).

Interpreting Title VII, the Supreme Court has set forth a methodology for determining "the order and allocation of proof in a private, non-class action challenging employment discrimination," when no direct evidence of discrimination is presented. *McDonnell Douglas Corp. v. Green*, 411 U.S. 792, 800 (1973). In *McDonnell Douglas*, the Court dictated that the plaintiff carries the initial burden to set forth a prima facie case of discrimination. *Id.* at 802. Under this framework, "[a] plaintiff satisfies this initial burden by showing that (1) he belongs to a protected group; (2) he was qualified for the position sought; (3) he suffered an adverse employment action; and (4) he was replaced by someone outside the protected class." *Manning v. Chevron Chem. Co.*, 332 F.3d 874, 881 (5th Cir. 2003).

The district court determined on summary judgment that Myers failed to set forth a prima facie case. We do not concur with the court's reasoning.[1] But, because summary judgment was proper nevertheless, we affirm. *See Kerr v. Comm'r of Internal Revenue*, 292 F.3d 490, 494 (5th Cir. 2002).

Two individuals, one male and one female, were hired to replace Myers. Despite Myers's assertion that the sex of her

---

[1]The district court found that Myers was not qualified for her job. The fact that Crestone hired her for this position and employed her in it for a significant period of time belies such a summary conclusion.

4

replacement remains a question of material fact, the record is clear.  We find that Myers was not replaced by someone outside of her protected class.

Accordingly, we agree that Myers has not made a prima facie showing of discrimination under Title VII.

*B. Prohibited Retaliation Under Title VII & TCHRA*

Under Title VII, to establish a prima facie case of retaliation, absent direct evidence of such, Myers must show: (1) that her activity was protected by Title VII; (2) that she has suffered an adverse employment action; and (3) that there existed a "causal link" between the action and the protected activity. *See Roberson v. Alltel Info. Servs.*, 373 F.3d 647, 655 (5th Cir. 2004).  Both parties treat Title VII and the TCHRA as identical statutes for the purpose of this burden-shifting analysis, using only federal precedents.  Since Texas courts also look to federal law to guide their application of the TCHRA, we follow their lead.  *See Wal-Mart Stores, Inc. v. Canchola*, 121 S.W.3d 735, 739 (Tex. 2003).

The district court concluded that Myers failed to present a prima facie case because, *inter alia*, she produced insufficient evidence of a causal nexus between the adverse employment action and her protected conduct.  We agree.

The only evidence of a connection between her firing and her

5

activity that Myers's offers is the timing: "Her termination followed approximately three months after her June 2000 complaints of discrimination."

We have held that "the combination of suspicious timing with other significant evidence of pretext[] can be sufficient to survive summary judgment." *Shackelford v. Deloitte & Touche, LLP*, 190 F.3d 398, 409 (5th Cir. 1999). *See also Fabela v. Socorro Indep. Sch. Dist.*, 329 F.3d 409, 417 n.9 (5th Cir. 2003); *Shirley v. Chrysler First, Inc.*, 970 F.2d 39, 44 (5th Cir. 1992). However, a reasonable finder of fact could not conclude that Crestone's proffered reasons for Myers's dismissal were pretextual. She simply has not produced enough "evidence [to] create[] a jury issue as to the employer's discriminatory animus or the falsity of the employer's legitimate nondiscriminatory explanation." *Sandstad v. CB Richard Ellis, Inc.*, 309 F.3d 893, 897 (5th Cir. 2002).

Specifically, the incidents Myers's points to as evidence of discriminatory animus either do no relate to her employment at Crestone or did not involve an employee responsible for her dismissal. The inappropriate and patently sexist behavior alleged, although abhorrent, does not meet this Court's test for showing "sufficient evidence of discrimination" in a plaintiff's

6

discharge.[2]

Similarly, Myers's argument that Crestone has been inconsistent in the reasons provided for her dismissal is unpersuasive.  There is no evidence that the current grounds for dismissal differ materially from those originally given.  Rather, the current explanations lend detail to the original assertion that Myers "did not have the initiative that they would expect in a leadership position and [she] wasn't keeping up with what was going on."[3]

Since she has not shown pretext, Myers may rely only on the dismissal's timing.  Such evidence is clearly insufficient for a reasonable jury to find a causal connection.

*C. Compensation Discrimination Under Title VII, TCHRA & EPA*

Myers alleges she was discriminatorily paid less than her male counterparts in violation of Title VII, the TCHRA, and the EPA.  We agree with the district court's conclusion that Myers

---

[2]We note that Myers did not complain of hostile work environment or constructive discharge before the district court, nor are such claims before us on appeal.

[3]Myers also argues that her file did not contain negative evaluations until after Crestone decided to fire her on September 18, 2000.  But her brief acknowledges that her personnel file contained "subjective personal evaluations" alleging "poor performance" prior to September 18, 2000.

She also objects to Crestone's failure to offer her "progressive discipline" prior to dismissal.  However, the record shows that Crestone discontinued the progressive discipline policy prior to Myers's dismissal.

7

did not present a prima facie case under Title VII and the TCHRA, and that, under the EPA, she failed to produce "evidence that Crestone paid an appropriate male counterpart higher compensation . . . for equal work on jobs, performed under similar working conditions, and requiring equal skill, effort, and responsibility." Myers basically concedes that she had significantly different responsibilities than her appropriate male comparators. *See* 29 U.S.C. § 206(d)(1); *Uviedo v. Steves Sash & Door Co.*, 738 F.2d 1425, 1431 (5th Cir. 1984). In fact, she states that she and her male colleagues had "many common job duties" but also "some 'unique responsibilities.'" In contrast with her comparators, Myers states that Crestone "whittled down her areas of responsibility requiring her to focus more on just one or two areas." For example, Myers was required to route "all sales leads" to another employee.

Thus, the district court correctly ruled that Myers failed to put forth evidence establishing a prima facie case of discriminatory pay in violation of Title VII and the THRCA.[4]

For the foregoing reasons, the judgment of the district court is hereby AFFIRMED.

---

[4]Although the district court's ruling was correct, the grounds it gave were not. It held that Myers failed to present a prima facie case under Title VII because she did not show she was qualified for her job. This is not the test for discriminatory pay.