Delois M. EVERETT, Plaintiff–Appellant,

v.

CENTRAL MISSISSIPPI, INCORPORATED HEAD START PROGRAM, Defendant–Appellee.

No. 11–60026
Summary Calendar.

United States Court of Appeals,
Fifth Circuit.

Oct. 5, 2011.

Joseph Robert Murray, II, Esq., Senior Trial Attorney, Harrison Law Office, Ripley, MS, Walter Brent McBride, Esq., McBride Law Firm, P.L.L.C., Tupelo, MS, for Plaintiff–Appellant.

Latoya Cheree Merritt, Phelps Dunbar, L.L.P., Tony Ramon Gaylor, Chambers & Gaylor Law Firm, Jackson, MS, for Defendant–Appellee.

Before WIENER, PRADO, and OWEN, Circuit Judges.

**40**

PER CURIAM: *

Plaintiff Delois M. Everett sued her former employer for retaliation under Title VII. The district court granted summary judgment in favor of the employer, holding Everett failed to make a prima facie showing that the adverse employment actions against her were retaliatory. We agree with the district court's conclusion and affirm.

## I

Everett began working for Central Mississippi, Inc. Head Start Program (CMI), a private company, in September 2004 as a Family Services Specialist. Beginning in March 2007, she had periodic disagreements and clashes with management over various personnel issues. In March 2007, she submitted an internal grievance after her supervisor, Jeanette Stewart, denied Everett's leave request and then docked Everett three days' pay for taking unauthorized leave. Stewart's actions were upheld on internal appeal.

Everett's personnel issues escalated when Beverly Forrest–Butts was appointed Everett's supervisor in May 2007. Several incidents occurred over the summer and fall of 2007, as follows:

- On June 4, 2007, Everett filed an internal complaint against Forrest–Butts for verbal harassment based on a conversation they had while on a recruitment trip. Everett complained that Forrest–Butts had referred to Everett as a "dumb lawyer" and had stated that she hoped no one would attend Everett's funeral when she died. CMI's Executive Director, Tela Collins, discussed the allegations with Forrest–Butts and warned her that

such comments were inappropriate. No further action was taken.

- On June 22, 2007, Forrest–Butts issued two Disciplinary Action Forms to Everett. One contained a written reprimand based on comments Everett had made during a meeting that Forrest–Butts considered inappropriate. In the other, Forrest–Butts informed Everett that she was suspended for five days without pay for "[w]illfully disobeying a job directive" and "disrespectful conduct toward a supervisor." The basis of the suspension, according to the form, was Everett's failure to submit a report on her recruitment efforts as directed in a "weekly performance plan."

- Everett's attempts to appeal the suspension internally generated additional tension. CMI's Director, Calvin Neely, instructed Everett to prepare her appeal on her own time and submit it to the proper authorities, and not to use the company's e-mail system or work time to prepare her appeal. The record does not reflect whether Everett properly submitted an internal appeal or its resolution, though Everett testified at her deposition that CMI management was not responsive to her appeal letters.

- On November 1, 2007, Neely suspended Everett without pay pending termination proceedings for "[d]irect refusal to submit a report as instructed by [CMI] Director." According to Everett, this suspension stemmed from her handling of a parent's complaint at one of the CMI centers and was unwarranted. Everett was reinstated on December 3, 2007, without back pay and subject to certain probationary

* Pursuant to 5TH CIR. R. 47.5, the court has determined that this opinion should not be published and is not precedent except under the limited circumstances set forth in 5TH CIR. R. 47.5.4.

conditions. According to Everett, she did not return to work until January 22, 2008.

On November 2 and 6, 2007, Everett filed Charges of Discrimination with the Equal Employment Opportunity Commission (EEOC), alleging that her November suspension was based on age discrimination and retaliation, and that Forrest–Butts's appointment as her acting supervisor was evidence of age discrimination at CMI. The EEOC subsequently issued a right-to-sue letter as to both charges. On March 24, 2008, Everett, acting pro se, filed suit in federal court (the First Suit), asserting causes of action under Title VII of the Civil Rights Act of 1964 [1] and the Age Discrimination in Employment Act (ADEA).[2] As discussed further below, the First Suit was subsequently dismissed on summary judgment.

After Everett filed the First Suit, no further documented incidents occurred at work until late 2008 and early 2009. These incidents included:

- On October 2, 2008, Forrest–Butts issued Everett a reprimand for moving several binders that had been placed in her office.
- Everett was instructed to relocate to what she describes as a "smaller, dingier office" and complained to supervisor Vanessa Topps. On October 15, 2008, Forrest–Butts informed Everett of the reasons for the relocation—which would result in Everett's sharing office space with the Family and Community Partnership staff—and warned her that failure to comply would be considered insubordination.
- On January 7, 2009, Topps reprimanded Everett for excessive absenteeism and tardiness in December and early

January that was affecting her job performance. Topps acknowledged Everett's absences were due to her caring for her ill sister, but noted that Everett had as yet declined to submit the paperwork for leave under the Family and Medical Leave Act (FMLA). According to Everett, she "had anticipated submitting [FMLA] papers, but my sister passed before I could do so." Forrest–Butts upheld the reprimand on appeal.

On January 26, 2009, Everett filed a third Charge of Discrimination with the EEOC for retaliation under Title VII asserting that, as a result of her previous charges and the First Suit, she had been subjected to harassment from management "in the form of being denied participation in training [and] meetings, denied continued education, denied promotions, and issued unwarranted written reprimands." The EEOC subsequently issued a right-to-sue letter.

No further incidents were documented until June 2009. At that time, Topps informed Forrest–Butts of two incidents occurring on June 10 and June 12 in which, respectively, Everett had reportedly provided insufficient notice that she would be absent and was insubordinate by leaving work early after her leave request was denied. Forrest–Butts informed Neely of these incidents as well as a June 22 incident in which Everett reportedly refused to visit one of the CMI centers at the assigned, previously scheduled time. Forrest–Butts recommended to Neely that Everett be terminated for "repeatedly violat[ing] personnel policy and procedures with attendance" and for "her repeated inappropriate behavior." According to Everett, her absences and her failure to visit the center were excused.

---

1. 42 U.S.C. §§ 2000e to 2000e–17.

2. 29 U.S.C. §§ 621–634.

Based on these three incidents, Neely advised Everett on June 25, 2009, that she was being suspended without pay pending termination proceedings for "[w]illfully disobeying a job directive that is a normal part of job responsibilities and willful disrespectful conduct toward a supervisor." Everett never returned to work, and CMI concedes the action was "effectively a termination" for purposes of this appeal. There is no record of an internal appeal of the suspension.

Everett subsequently filed the underlying lawsuit (Second Suit) for retaliation under Title VII, again acting as a pro se plaintiff. The magistrate judge *sua sponte* ordered the First and Second Suits consolidated. As the parties recognize, there was a good deal of procedural confusion following the consolidation order. To wit, CMI filed a motion to dismiss Everett's complaint in the Second Suit after the motions deadline because the complaint had never been served. The magistrate judge, recognizing Everett was proceeding *in forma pauperis* and that the failure to serve process on CMI was due to a court error, denied the motion to dismiss and granted Everett an extension of time to effect service.

In the meantime, the district court granted summary judgment in CMI's favor in the First Suit and dismissed the case. With regard to the claim of age discrimination, the district court held that Everett had failed to establish that her age was the but-for cause of her lack of a promotion. The district court also held Everett failed to present a prima facie case of retaliation as there was no evidence that any disciplinary action was causally linked to her filing a complaint with the EEOC. In light of the summary judgment order, CMI filed a motion to reconsider the magistrate judge's order granting Ev-

erett an extension of time to serve the complaint in the Second Suit, arguing that the summary judgment order applied to both consolidated cases. CMI also filed a motion for leave to file a motion for summary judgment in the event the court ruled that the summary judgment order did not apply to the Second Suit.

The magistrate judge denied CMI's motion to reconsider, and CMI filed the underlying motion for summary judgment (before leave was granted) in the Second Suit on November 15, 2010. Everett requested that she be given until November 29, 2010, to respond to the motion. She also separately filed a motion to strike the summary judgment motion. On November 29, 2010, the district court denied Everett's motion to strike, granted CMI leave to file its summary judgment motion, and gave Everett a deadline of December 1, 2010, to respond. Everett obtained counsel, who entered an appearance and timely filed a response to the summary judgment motion.

The district court granted summary judgment for CMI, holding that Everett could not establish a prima facie case of retaliation because she failed to show a causal link between her protected conduct—filing the First Suit and the January 2009 EEOC charge—and the adverse employment action. Everett now appeals the entry of summary judgment in the Second Suit only.

## II

We review a grant of summary judgment de novo, applying the same standards as the district court.[3] Summary judgment is proper when the evidence shows "that there is no genuine dispute as to any material fact and the movant is

---

**3.** *Ontiveros v. City of Rosenberg, Tex.,* 564 F.3d 379, 382 (5th Cir.2009).

entitled to judgment as a matter of law." [4] Although the evidence is viewed in the light most favorable to the nonmoving party,[5] a nonmovant may not rely on "conclusory allegations, unsubstantiated assertions, or only a scintilla of evidence" to create a genuine issue of material fact sufficient to survive summary judgment.[6]

### A

■ As an initial matter, Everett complains that, in its order granting CMI's motion for leave to file a summary judgment motion, the district court gave her only two days to respond to CMI's motion for summary judgment, thus "violat[ing] the letter and spirit of the law in dealing with *pro se* litigants." To the extent Everett challenges this order on appeal, a district court has "broad discretion to expand filing deadlines." [7] Everett has not shown an abuse of that discretion in this case. Her argument ignores the fact that the district court's deadline for Everett to file a response was two days later than the deadline Everett herself had requested. Moreover, Everett obtained counsel shortly before the response was due, but did not request an additional extension of time to file her response. Instead, she timely filed a response in accordance with the district court's order and has not explained whether or how she was prejudiced by the deadline. As the district court did not err in granting CMI leave to file its summary judgment motion or in setting the response deadline, we thus turn to the merits of the appeal.

### B

Title VII prohibits an employer from discriminating against an employee "because he has opposed any practice made an unlawful employment practice by this subchapter, or because he has made a charge, testified, assisted, or participated in any manner in an investigation, proceeding, or hearing under this subchapter." [8] A Title VII retaliation case based on circumstantial evidence, as in a discrimination case, is analyzed under the *McDonnell Douglas* burden-shifting framework.[9] The plaintiff must first make the following prima facie showing: "(1) that [she] engaged in activity protected by Title VII, (2) that an adverse employment action occurred, and (3) that a causal link existed between the protected activity and the adverse action." [10] If the plaintiff establishes a prima facie case, the burden "shifts to the defendant to demonstrate a legitimate nondiscriminatory purpose for the employment action." [11] Upon satisfaction of this burden, the burden then shifts back to the plaintiff to:

> create a genuine issue of material fact either (1) that the defendant's reason is not true, but is instead a pretext for

4. Fed.R.Civ.P. 56(a); *Chacko v. Sabre, Inc.*, 473 F.3d 604, 609 (5th Cir.2006).

5. *Jackson v. Cal–Western Packaging Corp.*, 602 F.3d 374, 377 (5th Cir.2010).

6. *Freeman v. Tex. Dep't of Criminal Justice*, 369 F.3d 854, 860 (5th Cir.2004) (citing *Little v. Liquid Air Corp.*, 37 F.3d 1069, 1075 (5th Cir.1994) (en banc)).

7. *Hetzel v. Bethlehem Steel Corp.*, 50 F.3d 360, 367 (5th Cir.1995).

8. 42 U.S.C. § 2000e–3(a).

9. *Septimus v. Univ. of Houston*, 399 F.3d 601, 608 (5th Cir.2005).

10. *Gee v. Principi*, 289 F.3d 342, 345 (5th Cir.2002) (alteration in original) (quoting *Raggs v. Miss. Power & Light Co.*, 278 F.3d 463, 471 (5th Cir.2002)) (internal quotation marks omitted).

11. *Id.* (quoting *Aldrup v. Caldera*, 274 F.3d 282, 286 (5th Cir.2001)) (internal quotation marks omitted).

[retaliation] (pretext alternative); or (2) that the defendant's reason, while true, is only one of the reasons for its conduct, and another motivating factor is the plaintiff's protected [activity] (mixed-motive[ ] alternative).[12]

■ The district court held that Everett failed to establish a causal link between her protected activity and any adverse employment action, and thus failed to make a prima facie showing of retaliation. We note that the district court evaluated Everett's retaliation claim under the anti-retaliatory provision of the ADEA,[13] rather than Title VII. Everett claims that, in doing so, the district court employed an unduly strict causation standard in light of the Supreme Court's recent holding in *Gross v. FBL Financial Services, Inc.,* relied upon by the district court in this case, that the "mixed-motives alternative" described above is not available in ADEA cases.[14]

Application of Title VII, however, would not have affected the analysis. The district court granted summary judgment based on Everett's failure to make a prima facie case and thus never reached the question of whether she had presented evidence of pretext or mixed motives. In turn, the prima facie elements of retaliation in an ADEA case are the same as those under Title VII.[15] As discussed below, we agree with the district court that this case may be resolved at the prima facie stage and that "[t]he question of pretext versus mixed-motive treatment" need not be reached.[16] Thus, any error by the district court in limiting its analysis to the ADEA was harmless.

### 1

■ In light of the procedural issues arising as a result of the consolidation of the First and Second Suits, it is helpful to clarify which allegedly retaliatory acts form the actionable basis of Everett's claims for purposes of this appeal. As noted above, Everett appealed only the summary judgment order in the Second Suit. The EEOC charge that formed the basis for the Second Suit was filed on January 26, 2009. As applicable in this case, Title VII requires an individual to file a charge within 180 days "after the alleged unlawful employment practice occurred."[17] Thus, only those acts that occurred up to 180 days before the charge was filed—in

---

12. *Keelan v. Majesco Software, Inc.,* 407 F.3d 332, 341 (5th Cir.2005) (quoting *Rachid v. Jack in the Box, Inc.,* 376 F.3d 305, 312 (5th Cir.2004)) (internal quotation marks omitted) (describing pretext and mixed-motive alternatives on summary judgment in Title VII discrimination case); *see also Cothran v. Potter,* 398 Fed.Appx. 71, 73 (5th Cir.2010) (unpublished) (describing pretext and mixed-motive alternatives on summary judgment in Title VII retaliation case); *Rios v. Rossotti,* 252 F.3d 375, 380 (5th Cir.2001) ("The framework for analyzing a retaliation claim is the same as that used in the employment discrimination context.").

13. 29 U.S.C. § 623(d).

14. 557 U.S. 167, 129 S.Ct. 2343, 2349, 174 L.Ed.2d 119 (2010); *see also Smith v. Xerox Corp.,* 602 F.3d 320, 328 (5th Cir.2010).

15. *Shirley v. Chrysler First, Inc.,* 970 F.2d 39, 42 (5th Cir.1992) ("A plaintiff establishes a prima facie case of retaliation by showing: (1) that she engaged in activity protected by Title VII or the ADEA; (2) that an adverse employment action occurred; and (3) that there was a causal connection between the participation in the protected activity and the adverse employment decision.").

16. *Keelan,* 407 F.3d at 341 ("The question of pretext versus mixed-motive treatment is only reached after a plaintiff has met his *prima facie* showing under the modified *McDonnell Douglas* standard and the defendant has responded with a legitimate nondiscriminatory reason.").

17. 42 U.S.C. § 2000e–5(e)(1).

this case, no earlier than July 30, 2008—are actionable.[18] In her summary judgment response and her briefing on appeal, Everett extensively references CMI's conduct in 2007 that generated the First Suit. Although those acts may not be used as the basis for Title VII liability in the Second Suit, they may be used "as background evidence in support of a timely claim." [19] We will consider them accordingly.

██ In addition, we note that Everett did not file a new Charge of Discrimination with the EEOC challenging her June 2009 termination, thereby raising the issue of whether she failed to exhaust her administrative remedies as to her claim of retaliation based on that termination.[20] However, a Title VII suit "may include allegations like or related to allegation[s] contained in the [EEOC] charge and growing out of such allegations during the pendency of the case before the Commission." [21] In this case, the EEOC did not issue a right-to-sue letter until October 2009, and the substance of Everett's retaliation claim has not changed in this suit other than the addition of the later-occurring adverse employment action. CMI concedes that "it is [therefore] arguable that the EEOC could have learned of Everett's June 2009 [termination] in the course of investigating the January 2009 charge." Accordingly, we will consider the termination in evaluating Everett's retaliation claim.

### 2

Turning to the first element of Everett's prima facie case, an employee has engaged in protected activity under Title VII if she has "opposed any practice made an unlawful employment practice by this subchapter," or has "made a charge, testified, assisted, or participated in any manner in an investigation, proceeding, or hearing under this subchapter." [22] It is undisputed that Everett engaged in protected conduct when she filed the First Suit in March 2008 and the EEOC charge on January 26, 2009.

Under the second prong, adverse employment actions include those that "a reasonable employee would have found [to be] materially adverse," meaning they "well might have dissuaded a reasonable worker from making or supporting a charge of discrimination." [23] It is undisputed that Everett's suspension on June 25, 2009, which CMI concedes was equivalent to a termination for purposes of this case, constitutes an adverse employment action. With regard to CMI's issuance of reprimands on October 2, 2008, and June 7, 2009, and Everett's relocation to a smaller office on October 15, 2008, we will simply assume without deciding that they qualify

---

**18.** *Id.; see also Nat'l R.R. Passenger Corp. v. Morgan,* 536 U.S. 101, 113, 122 S.Ct. 2061, 153 L.Ed.2d 106 (2002) (holding that "discrete discriminatory acts are not actionable if time barred, even when they are related to acts alleged in timely filed charges").

**19.** *Morgan,* 536 U.S. at 113, 122 S.Ct. 2061.

**20.** *See Clark v. Kraft Foods, Inc.,* 18 F.3d 1278, 1280 (5th Cir.1994).

**21.** *McClain v. Lufkin Indus., Inc.,* 519 F.3d 264, 273 (5th Cir.2008) (alterations in original) (quoting *Sanchez v. Standard Brands, Inc.,* 431 F.2d 455, 466 (5th Cir.1970)) (internal quotation marks omitted).

**22.** 42 U.S.C. § 2000e–3(a).

**23.** *Burlington N. & Santa Fe Ry. Co. v. White,* 548 U.S. 53, 68, 126 S.Ct. 2405, 165 L.Ed.2d 345 (2006) (quoting *Rochon v. Gonzales,* 438 F.3d 1211, 1219 (D.C.Cir.2006)) (internal quotation marks omitted); *see also id.* (noting that "normally petty slights, minor annoyances, and simple lack of good manners will not create such deterrence").

as materially adverse actions under *Burlington*.

CMI contends, and the district court held, that Everett failed to satisfy the third prima facie element by showing a causal link between the protected activity and the adverse actions. The required "causal link" at the prima facie stage "does not rise to the level of a 'but for' standard," and "[t]he plaintiff 'need not prove that her protected activity was the sole factor motivating the employer's challenged decision.'" [24] "Nevertheless, the plaintiff must produce *some* evidence of a causal link ... to establish a prima facie case of retaliation." [25] Temporal proximity between protected activity and an adverse employment action, by itself, does not constitute sufficient evidence to satisfy the prima facie burden unless that proximity is "very close." [26] Moreover, in evaluating causation the focus must be on the final decisionmaker; that is, the plaintiff must present evidence that the final decisionmaker with respect to the adverse employment action was aware of the plaintiff's protected conduct. [27]

■ Everett has failed to satisfy her burden in this case. First, as CMI argues, Everett has failed to present evidence that either Forrest–Butts (who issued the reprimands and the office relocation order, and recommended the termination) or

Neely (who issued the suspension pending termination) were aware of the First Suit or any of the EEOC charges. Instead, Everett points to her internal appeals of the various disciplinary actions taken against her as indicating knowledge by Neely and Forrest–Butts of protected conduct. However, Everett's internal grievances contained no complaints that she was being treated unfairly due to her age, sex, or any other unlawful factor. Rather, they simply generally dispute the basis of the various disciplinary actions taken against her and thus do not constitute protected activities under Title VII or the ADEA. [28]

Everett also points to the internal complaint she filed against Forrest–Butts in June 2007 after Forrest–Butts called her a "dumb lawyer" and stated she hoped no one would go to Everett's funeral when she died. Again, however, while Everett complained that the remarks were "demeaning, humiliating, and degrading," she did not assert, either directly or indirectly, that she was subjected to these remarks because of her age, sex, or other protected status. Moreover, for Everett's opposition to her employer's actions to constitute protected activity, she must prove that she had "a reasonabl[e] belief that the employer was engaged in unlawful employment practices." [29] Everett has not made such a

---

**24.** *Gee v. Principi*, 289 F.3d 342, 345 (5th Cir.2002) (quoting *Long v. Eastfield Coll.*, 88 F.3d 300, 305 n. 4 (5th Cir.1996)).

**25.** *Ackel v. Nat'l Commc'ns, Inc.*, 339 F.3d 376, 385 (5th Cir.2003).

**26.** *Clark Cnty. Sch. Dist. v. Breeden*, 532 U.S. 268, 273, 121 S.Ct. 1508, 149 L.Ed.2d 509 (2001).

**27.** *Ackel*, 339 F.3d at 385.

**28.** *See Turner v. Baylor Richardson Med. Ctr.*, 476 F.3d 337, 349 (5th Cir.2007) (email to supervisors that "contain[ed] no reference to

conduct that could even plausibly be considered discriminatory in nature" was not protected conduct); *see also Harris–Childs v. Medco Health Solutions, Inc.*, 169 Fed.Appx. 913, 916 (5th Cir.2006) (unpublished) (plaintiff's complaint of unfair treatment did not put employer on notice that her complaint was based on racial or sexual discrimination and thus did not constitute protected activity).

**29.** *Byers v. Dallas Morning News, Inc.*, 209 F.3d 419, 428 (5th Cir.2000) (quoting *Payne v. McLemore's Wholesale & Retail Stores*, 654 F.2d 1130, 1140 (5th Cir.1981)) (internal quotation marks omitted).

showing with regard to Forrest–Butts's remarks.

Finally, Everett contends she complained to CMI's management about the failure to follow typical hiring procedures when Forrest–Butts was appointed as Everett's supervisor in May 2007. There is again no indication that any of her complaints contained allegations, either explicit or implicit, of age or sex discrimination. Rather, her first claim that she was being discriminated against due to an unlawful factor—her age—was in her first EEOC charge filed in November 2007. As noted above, the lawsuit that followed was dismissed on summary judgment, which was not appealed. Because there is no evidence in the record that those responsible for the adverse employment actions against Everett were aware of her protected activity, Everett cannot demonstrate the required prima facie causal link.

Moreover, even assuming the final decisionmakers had knowledge of the EEOC charges and the First Suit, there is no evidence of the requisite causal connection. The record indicates scattered instances of disciplinary action taken against Everett both before and after she filed her EEOC charges and the First Suit. All disciplinary action against her in 2007 occurred before she filed her first charge. In terms of the actionable conduct occurring in October 2008 and June 2009, Everett can point to nothing other than temporal proximity to establish a causal link. However, as noted above, the Supreme Court has clarified that "(1) to be persuasive evidence, tempo-

ral proximity must be very close, and importantly (2) temporal proximity alone, when very close, can in some instances establish a *prima facie* case of retaliation." [30] Such temporal proximity is not present in this case.

Everett was issued a reprimand and was instructed to move into a smaller office in October 2008, over six months after she filed the First Suit. Everett was terminated in June 2009, five months after she filed her third EEOC charge. This is not the kind of "very close" temporal proximity that has been recognized as providing sufficient evidence of causality, in and of itself, to establish a prima facie case of retaliation.[31] The insufficiency is rendered even more stark by the fact that Everett's disciplinary history began months before she engaged in protected conduct.

Everett raises two arguments in support of her assertion of a causal link. First, she contends that, from the time she was hired in September 2004, her employment went smoothly and she had no disciplinary issues until she complained about Forrest–Butts's conduct in June 2007. However, as discussed above, that internal grievance did not constitute protected activity under Title VII or the ADEA. Again, Everett began having disciplinary issues at work as early as March 2007, and they continued to arise both before and after she filed her first EEOC charge in November 2007.

Second, Everett claims that other employees committed the same disciplinary violations as she and were not similarly reprimanded. Everett latches onto the

---

**30.** *Strong v. Univ. Healthcare Sys., L.L.C.*, 482 F.3d 802, 808 (5th Cir.2007) (citing *Breeden*, 532 U.S. at 273, 121 S.Ct. 1508).

**31.** *See Breeden*, 532 U.S. at 273–74, 121 S.Ct. 1508 (citing circuit case law holding three— and four-month periods to be insufficient); *see also Barkley v. Singing River Elec. Power Ass'n*, 433 Fed.Appx. 254, 260 (5th Cir.2011)

(unpublished) (holding that a four-month gap, standing alone, was insufficient to establish prima facie evidence of causation, and noting that "Fifth Circuit precedent on that point, although largely unpublished, fits with the Supreme Court's requirement that the temporal proximity be 'very close' to show causation").

district court's statement that "[t]his fact is arguably some evidence to suggest that retaliation was one motivating factor in [CMI's] conduct." Everett's "claim" that others were treated differently, however, will not create a fact issue sufficient to survive summary judgment unless it is supported by evidence in the record.[32] Neither the portions of the record cited by Everett in her briefing, nor any other record evidence examined by this court, supports the contention that other, similarly situated employees were treated differently than Everett.

In sum, Everett has failed to demonstrate the existence of a genuine issue of material fact that a causal link exists between her exercise of protected activity under Title VII and the ADEA, and the adverse employment actions taken against her by CMI. Accordingly, she has failed to make a prima facie showing of retaliation as a matter of law.

\*      \*      \*

For the foregoing reasons, we AFFIRM the district court's judgment.

---

**32.** *See* FED.R.CIV.P. 56(a), (c) (setting forth summary judgment standard and providing that a party asserting that a fact is genuinely disputed must cite to particular portions of the record in support of that assertion); *Freeman v. Tex. Dep't of Criminal Justice*, 369 F.3d 854, 860 (5th Cir.2004) (noting that "unsub-

stantiated assertions" do not create a fact issue on summary judgment).

\* Pursuant to 5TH CIR. R. 47.5, the court has determined that this opinion should not be published and is not precedent except under the limited circumstances set forth in 5TH CIR. R. 47.5.4.