# IN THE UNITED STATES COURT OF APPEALS
## FOR THE FIFTH CIRCUIT

No. 13-31132

United States Court of Appeals
Fifth Circuit

**FILED**
February 2, 2015

Lyle W. Cayce
Clerk

LLOYD FLANNER,

Plaintiff–Appellant

v.

CHASE INVESTMENT SERVICES CORP.,
doing business as JP MORGAN SECURITIES, L.L.C.

Defendant–Appellee

Appeal from the United States District Court
for the Western District of Louisiana
USDC No. 3:11-CV-940

Before STEWART, Chief Judge, OWEN, Circuit Judge, and MORGAN, District Judge.[*]

PER CURIAM:[**]

Lloyd Flanner brought suit against his former employer Chase Investment Services Corp., doing business as JP Morgan Securities, L.L.C. (JPMS), asserting claims under the Age Discrimination in Employment Act

---

[*] District Judge of the Eastern District of Louisiana, sitting by designation.

[**] Pursuant to 5TH CIR. R. 47.5, the court has determined that this opinion should not be published and is not precedent except under the limited circumstances set forth in 5TH CIR. R. 47.5.4.

No. 13-31132

(ADEA), Family and Medical Leave Act (FMLA), Americans with Disabilities Act (ADA), and the Louisiana law of defamation. The district court granted summary judgment in favor of JPMS with respect to all claims. We AFFIRM IN PART and REVERSE AND REMAND IN PART.

## I.

Flanner was employed by JPMS as a financial advisor from August 2003 until August 9, 2010 and was assigned to the Northside and Fourth Street branches in Monroe, Louisiana. During December 2009, Flanner was diagnosed with a heart condition. He requested and was granted medical leave under the FMLA to undergo surgery. Flanner returned to his position as a financial advisor on April 5, 2010; he was 59 years old at the time. Upon his return, he was soon back to his pre-surgery productivity and was told by his supervisors that he was "doing great."

Around the beginning of June, Flanner's attorney, Todd Newman, sent an assistant to the Northside branch to purchase a $25 money order. When the assistant was unable to do so, Newman called Flanner for help. In response, Flanner withdrew $25 from his personal bank account, purchased the money order, and gave it to Newman's assistant. Newman repaid Flanner the $25 the following day.

In late July, JPMS management learned of this incident and began an investigation. Flanner's immediate supervisor, Daniel Nowak, confirmed that Flanner had gone behind the teller line to purchase the $25 money order for a bank customer. Flanner was suspended during the investigation and later terminated on August 9, 2010. Flanner was replaced by the 53-year-old Howard Johnson at the Fourth Street branch and by the 32-year-old Jason Tiser at the Northside branch.

No. 13-31132

Flanner's written termination notice stated he was terminated because he violated section 6.2 of the JPMS Code of Conduct, which prohibits employees from "borrow[ing] money (other than nominal amounts) from or lend[ing] money to other employees, customers or suppliers." On September 2, 2010, JPMS filed a Form U5 with the Financial Industry Regulatory Authority (FINRA) regarding Flanner's termination. On the form, JPMS stated Flanner was discharged for "violating *investment-related* statutes, regulations, rules, or industry standards of conduct" and further described the incident saying "Registered rep used his personal funds to purchase a money order in the amount of $25 for the convenience of a bank customer." Flanner maintains the reason given on his written termination notice was merely pretext for JPMS's discriminatory termination and that the statement made on the Form U5 was defamatory.

On June 22, 2011, Flanner filed suit in the Middle District of Louisiana alleging discrimination claims under the ADEA, FMLA, ADA, and a claim for defamation under Louisiana law. The district court granted summary judgment in favor of JPMS on all claims. Flanner timely appealed.

## II.

This Court reviews the grant of summary judgment *de novo*, applying the same standards as the district court.[1] Summary judgment is appropriate where "the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law."[2] A fact is "material" if it would affect the outcome of the action, and a dispute is "genuine" if the evidence is such that a reasonable jury could return a verdict

---

[1] *Bryan v. McKinsey & Co., Inc.*, 375 F.3d 358, 360 (5th Cir. 2004).

[2] Fed. R. Civ. P. 56(a). *See also Celotex Corp. v. Catrett*, 477 U.S. 317, 322–23 (1986).

No. 13-31132

in favor of the nonmoving party.[3] The Court must "view the evidence and all factual inferences from that evidence in the light most favorable to the party opposing the motion and all reasonable doubts about the facts are resolved in favor of the nonmoving litigant."[4]

## III.

*Age Discrimination Claim*

"Under the ADEA, it is unlawful for an employer 'to fail or refuse to hire or to discharge any individual or otherwise discriminate against any individual with respect to his compensation, terms, conditions, or privileges of employment, because of such individual's age.'"[5] To establish an age discrimination claim, an employee must prove by a preponderance of the evidence, which may be direct or circumstantial, that age was the "but for" cause of the employer's adverse decision.[6]

Under the *McDonnell Douglas Corp. v. Green* burden-shifting framework, the employee must first establish a *prima facie* case of age discrimination by showing that "(1) he was discharged; (2) he was qualified for the position; (3) he was within the protected class at the time of discharge; and (4) he was either i) replaced by someone outside the protected class, ii) replaced by someone younger, or iii) otherwise discharged because of his age."[7] The Supreme Court has clarified that "the prima facie case requires 'evidence adequate to create an inference that an employment decision was based on a[n] [illegal] discriminatory criterion . . . .' In the age-discrimination

---

[3] *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986).

[4] *Bryan*, 375 F.3d at 360.

[5] *Machinchick v. PB Power, Inc.*, 398 F.3d 345, 349–50 (5th Cir. 2005) (quoting 29 U.S.C. § 623(a)(1)).

[6] *Gross v. FBL Fin. Servs., Inc.*, 557 U.S. 167, 177–78 (2009).

[7] *Jackson v. Cal–Western Packaging Corp.*, 602 F.3d 374, 378 (5th Cir. 2010) (internal quotation marks and citation omitted).

context, such an inference cannot be drawn from the replacement of one worker with another worker insignificantly younger."[8] Thus, a plaintiff's replacement must be "substantially younger" to create an inference of discrimination.[9]

If the employee establishes a *prima facie* case, "the burden shifts to the employer to provide a legitimate, nondiscriminatory reason for terminating employment."[10] "If the employer satisfies this burden, the burden shifts back to the employee to prove either that the employer's proffered reason was not true—but was instead a pretext for age discrimination—or that, even if the employer's reason is true, he was terminated because of his age."[11] An employee "may show pretext either through evidence of disparate treatment or by showing that the employer's proffered explanation is false or unworthy of credence."[12] "But a reason cannot be proved to be 'a pretext *for discrimination*' unless it is shown both that the reason was false, and that discrimination was the real reason."[13]

Ordinarily, we assume *arguendo* that an employee established his *prima facie* case and limit our inquiry to whether the legitimate non-discriminatory reasons given, if any, were a pretext for age discrimination.[14] In this case, however, the district court found Flanner failed to establish a *prima facie* case of age discrimination. The first three elements required for a

---

[8] *O'Connor v. Consol. Coin Caterers Corp.*, 517 U.S. 308, 312–13 (1996) (alterations in original) (emphasis omitted) (quoting *Teamsters v. United States*, 431 U.S. 324, 358 (1977)).

[9] *See id.*

[10] *Miller v. Raytheon Co.*, 716 F.3d 138, 144 (5th Cir. 2013).

[11] *Id.* (citing *Gross,* 557 U.S. at 180).

[12] *Jackson*, 602 F.3d at 378–79 (internal quotation marks and citation omitted).

[13] *St. Mary's Honor Ctr. v. Hicks,* 509 U.S. 502, 515 (1993).

[14] *See, e.g.*, *Kean v. Jack Henry & Assocs., Inc.*, 577 F. App'x 342, 350 (5th Cir. 2014) (unpublished); *Golbert v. Saitech, Inc.*, 439 F. App'x 304, 306 (5th Cir. 2011) (unpublished); *Patel v. Midland Mem'l Hosp. & Med. Ctr.*, 298 F.3d 333, 342 (5th Cir. 2002).

*prima facie* case of age discrimination are undisputed, but the district court found Flanner did not establish the fourth element. In so finding, the court reasoned that because Flanner was replaced by a worker who was insignificantly younger than he, no inference of age discrimination was created, and Flanner had no other evidence of age discrimination. The district court stated:

> Flanner relies solely on the fact that the two individuals who replaced him were younger than him as a basis for establishing a *prima facie case*. Flanner has presented no evidence of any disparaging comments based on his age and notably, the difference in Flanner's age (59) and that of Mr. Johnson (53) was not so disparaging to create an inference of age discrimination. There is absolutely no evidence to validate Flanner's claim of age discrimination.

This Court disagrees and finds that at least one, and maybe both, of Flanner's replacements was young enough to create an inference of age discrimination. The Supreme Court has stated that "[b]ecause the ADEA prohibits discrimination on the basis of age and not class membership, the fact that a replacement is substantially younger than the plaintiff is a far more reliable indicator of age discrimination than is the fact that the plaintiff was replaced by someone outside the protected class."[15] Thus, to create an inference of age discrimination, at least one of Flanner's replacements must be *substantially younger* than Flanner.

Unlike some of our sister circuits,[16] this Court has not settled on a standard for what age difference qualifies as "substantially younger" such that an inference of age discrimination may be made to establish a *prima*

---

[15] *O'Connor v. Consol. Coin Caterers Corp.*, 517 U.S. 308, 313 (1996).

[16] See *Grosjean v. First Energy Corp.*, 349 F.3d 332, 340 (6th Cir. 2003), for an analysis of cases from various circuits finding certain age differences, without more, either sufficient or insufficient to create an inference of age discrimination.

*facie* case.[17] This Court has stated: "[t]he ADEA does not lend itself to a bright-line age rule . . . in which replacement by a worker outside the protected category is a convenient proof guideline."[18] Without citation or further elaboration, the district court found the six-year difference between Flanner's age and that of Johnson, his replacement at the Fourth Street branch, "was not so disparaging to create an inference of age discrimination." Yet, this Court has stated twice that it is a "close question" whether a five-year age difference, without more, is sufficient to support an inference of age discrimination.[19] If five years is a close call, so too is six years. In close calls such as this, this Court has considered the relative ages of the plaintiff and the replacement employee as evidence on the ultimate issue of proving "but for" causation rather than as a basis for finding that the employee has failed to make a *prima facie* case.[20]

More importantly, the district court failed to consider the fact that Flanner was replaced by *two* employees: it merely addressed the age difference between Flanner and Johnson and found the six-year age difference was not substantial enough to support an inference of discrimination. But Flanner's replacement at the Northside branch, Tiser, was twenty-seven years Flanner's junior, and there is no doubt he was

---

[17] *See Rachid v. Jack In The Box, Inc.*, 376 F.3d 305, 313 (5th Cir. 2004); *Bienkowski*, 851 F.2d at 1506.

[18] *See Bienkowski*, 851 F.2d at 1506 (citing *McCorstin v. United States Steel Corp.*, 621 F.2d 749, 754 (5th Cir. 1980)).

[19] The Court decided these cases on other grounds, without deciding whether five years is sufficiently younger to support an inference of discrimination. *See Rachid*, 376 F.3d at 313 (noting that a plaintiff's replacement being five years younger is a "close question," but the Court "need not reach it because [the plaintiff's] other evidence easily establishes a prima facie case"); *Bienkowski*, 851 F.2d at 1506 (noting, pre-*O'Connor,* that a five year age difference "does not legally preclude the possibility of discrimination" and that "it is a close question whether he established a prima facie case").

[20] *See Bienkowski*, 851 F.2d at 1506 (citing *U.S. Postal Serv. Bd. of Governors v. Aikens,* 460 U.S. 711, 714 (1983)).

"substantially younger." Thus, the evidence presented, without more, supports an inference of age discrimination because Flanner also was replaced by Tiser, a substantially younger employee. Flanner has made a *prima facie* case of age discrimination.

Although the district court found Flanner failed to make a *prima facie* showing of age discrimination, it did perform the burden-shifting analysis and found JPMS articulated a non-discriminatory reason for Flanner's termination, his violation of Section 6.2 of JPMS's Code of Conduct, but that Flanner did not prove the proffered reason was a pretext. The district court stated that "[s]imply disputing JPMS's business judgment is not enough to prove pretext without producing evidence that the reasons stated were false and pretextual." For that reason, the district court found "Flanner ha[d] failed to establish that JPMS' [sic] reason was either false or unworthy of credence."

This Court agrees JPMS articulated a non-discriminatory reason for Flanner's termination, which shifts the burden back to Flanner to show pretext, "either through evidence of disparate treatment or by showing that the employer's proffered explanation is false or unworthy of credence."[21] Unlike the district court, we find the evidence in the record creates a factual dispute as to whether JPMS's proffered reason for Flanner's termination was pretextual. Flanner points to evidence he contends creates a factual dispute as to whether the reason given was pretextual: (1) co-workers routinely lent similar amounts of money to other co-workers, who also were customers of Chase, and either such actions were not considered violations of the Code of Conduct or those persons were not punished for violating JPMS's policies;

---

[21] *Jackson v. Cal-Western Packaging Corp.*, 602 F.3d 374, 378–79 (5th Cir. 2010) (internal quotation marks and citations omitted).

and (2) the proffered reason was not the original reason cited for Flanner's termination as he was initially cited for violations of the Registered Representatives' Manual.

"[A] plaintiff's prima facie case, combined with sufficient evidence to find that the employer's asserted justification is false, may permit the trier of fact to conclude that the employer unlawfully discriminated."[22] In this case, viewing the evidence in the light most favorable to Flanner, there is a genuine dispute of material fact as to whether the proffered reason was false and actually a pretext for discrimination. Accordingly, JPMS was not entitled to summary judgment, and the district court's ruling with respect to Flanner's ADEA claim is reversed.

*FMLA Retaliation Claim*

To establish a *prima facie* case of retaliatory discharge under the FMLA, "the employee must show that (1) she engaged in a protected activity, (2) the employer discharged her, and (3) there is a causal link between the protected activity and the discharge."[23] "Protected activity" includes both exercising rights under the FMLA, such as taking leave, as well as opposing practices made unlawful under the Act.[24]

This Court has discussed the analysis to be used when, as here, there is no direct evidence of discriminatory intent:

> When there is no direct evidence of discriminatory intent, . . . the familiar *McDonnell–Douglas* burden shifting framework [is used] to determine whether an employer discharged an employee in retaliation for participating in FMLA-protected activities. Specifically, once the employee establishes a *prima facie* case of retaliation, the burden shifts to the employer to articulate a

---

[22] *Reeves v. Sanderson Plumbing Prods., Inc.*, 530 U.S. 133, 148 (2000).

[23] *Richardson v. Monitronics Int'l, Inc.*, 434 F.3d 327, 332 (5th Cir. 2005).

[24] *See id.*

legitimate, nondiscriminatory reason for the adverse employment action. If the employer succeeds in doing so, the burden shifts back to the employee to show by a preponderance of the evidence that the employer's articulated reason is a pretext for discrimination.[25]

The district court concluded Flanner failed to make a *prima facie* case of retaliation because he did not establish a causal connection between the adverse employment action and his taking FMLA leave. The court found "the temporal element of an adverse employment action four months after returning from taking FMLA leave is insufficient to establish a causal connection."

Flanner clearly was protected under the FMLA because he exercised his right to take FMLA leave and suffered an adverse employment action when he was terminated from his position. With respect to the third element, proving a causal link, Flanner relies on *Evans v. City of Houston*, in which this Court noted that a Texas district court found "'a time lapse of up to four months . . . sufficient to satisfy the causal connection for summary judgment purposes.'"[26] But the actual time gap this Court found in *Evans* to be sufficiently close was only five days.[27] JPMS cites *Amsel v. Texas Water Development Board*, an unpublished opinion in which this Court affirmed summary judgment finding a two-month gap, while "short, []is not, by itself, enough to show a causal connection based upon temporal proximity alone."[28]

The Supreme Court has stated that "[t]he cases that accept mere temporal proximity between an employer's knowledge of protected activity

---

[25] *Id.* at 332–33.

[26] 246 F.3d 344, 354 (5th Cir. 2001) (quoting *Weeks v. NationsBank, N.A.*, No. 98-1352, 2000 WL 341257, at *3 (N.D. Tex. 2000)).

[27] *Id.*

[28] 464 F. App'x 395, 402 (5th Cir. 2012) (unpublished) (citing *Clark Cnty. Sch. Dist. v. Breeden*, 532 U.S. 268 (2001)).

and an adverse employment action as sufficient evidence of causality to establish a prima facie case uniformly hold that the temporal proximity must be 'very close.'"[29] Additionally, this Court's case law, although largely unpublished, "fits with the Supreme Court's requirement that the temporal proximity be 'very close' to show causation," and our previous decisions that a "four-month gap in time, standing alone, is insufficient to establish *prima facie* evidence of causation."[30]

The Court is mindful the requirement of showing "causation . . . at the prima facie stage is much less stringent than a 'but for' standard,"[31] and the Court must draw all reasonable inferences in Plaintiff's favor on this motion for summary judgment. However, after careful review of the record, the Court finds Flanner failed to prove his *prima facie* case. The four-month time lapse, without more, is insufficient evidence to establish the causal link required to make a *prima facie* case of FMLA retaliation. The district court's ruling with respect to Flanner's FMLA retaliation claim is affirmed.

*ADA Claim*

To establish a *prima facie* case for violation of the ADA, a plaintiff must show "that (a) she is disabled, has a record of having of having a disability, or is regarded as disabled, (b) she is qualified for her job, (c) she was subjected

---

[29] *Breeden*, 532 U.S. at 273–74 (quoting *O'Neal v. Ferguson Constr. Co.,* 237 F.3d 1248, 1253 (10th Cir. 2001); citing *Richmond v. ONEOK, Inc.,* 120 F.3d 205, 209 (10th Cir. 1997) (3–month period insufficient); *Hughes v. Derwinski,* 967 F.2d 1168, 1174–75 (7th Cir. 1992) (4–month period insufficient)).

[30] *Barkley v. Singing River Elec. Power Ass'n*, 433 F. App'x 254, 260 (5th Cir. 2011) (unpublished) (citing *Ajao v. Bed Bath & Beyond, Inc.,* 265 F. App'x. 258, 265 (5th Cir. 2008) (per curiam) (finding temporal proximity of four months "not close enough"); *Myers v. Crestone Int'l, LLC,* 121 F. App'x. 25, 28 (5th Cir. 2005) (per curiam) (three-month gap did not, by itself, create causal link); *Raggs v. Miss. Power & Light Co.,* 278 F.3d 463, 471–72 (5th Cir. 2002) (five-month lapse, same)). *See also Everett v. Cent. Mississippi, Inc. Head Start Program*, 444 F. App'x 38, 47 (5th Cir. 2011) (unpublished) (finding temporal proximity of five months not close enough).

[31] *Montemayor v. City of San Antonio*, 276 F.3d 687, 692 (5th Cir. 2001).

to an adverse employment action on account of her disability or the perception of her disability, and (d) she was replaced by or treated less favorably than non-disabled employees."[32] Disability refers to "a physical or mental impairment that substantially limits one or more of the major life activities of such individual" and also "being regarded as having such an impairment."[33] "An individual meets the requirement of 'being regarded as having such an impairment' if the individual establishes that he or she has been subjected to an action prohibited under this chapter [Equal Opportunity for Individuals with Disabilities] because of an actual or perceived physical or mental impairment whether or not the impairment limits or is perceived to limit a major life activity."[34]

The district court concluded Flanner failed to establish a *prima facie* case under the ADA because he offered no evidence of a disability or perceived disability. Flanner argues on appeal that it may be implied that JPMS perceived him as disabled because JPMS was aware of his heart surgery. In response, JPMS cites district court opinions rejecting a plaintiff's subjective belief and conclusory allegations as establishing a *prima facie* case of having been regarded as disabled. JPMS also argues there is no basis for an inference of perception of any impairment because Flanner testified at his deposition that he was able to do the same work at the same production level after returning from leave.

This Court agrees with the district court that Flanner failed to make a *prima facie* case for an ADA violation because he points to no evidence indicating JPMS perceived him as disabled. In this case, the Court finds that

---

[32] *E.E.O.C. v. Chevron Phillips Chem. Co., LP,* 570 F.3d 606, 615 (5th Cir. 2009).

[33] 42 U.S.C. § 12102(1). *See also Griffin v. United States Parcel Serv., Inc.,* 661 F.3d 216, 222 (5th Cir. 2011).

[34] 42 U.S.C. § 12102(3)(A).

JPMS's mere knowledge of Flanner's heart surgery alone does not support an inference that JPMS regarded him as disabled. Further, Flanner testified his production level was about the same before and after surgery, so there is no evidence Flanner was actually disabled. Because Flanner points to no competent summary judgment evidence showing JPMS perceived him to be disabled because of his heart condition or that he actually was disabled, the district court's ruling with respect to Flanner's ADA claim is affirmed.

*Defamation*

Flanner's complaint alleges JPMS defamed him by reporting a false statement on the Form U5. Flanner contends it was false to say he violated an investment-related industry standard of conduct when he loaned money to a bank customer. Flanner maintains he did not violate § 6.2 of JPMS's Code of Conduct, but even if he did, the statement on the Form U5 was still false because § 6.2 of JPMS's Code of Conduct is not an investment-related industry standard. Because this statement was injurious to Flanner's professional reputation, he argues the statement was defamatory *per se*, and it was made with knowledge and/or reckless disregard of falsity.

The Louisiana Supreme Court in *Kennedy v. Sheriff of East Baton Rouge* held that in an action by a private individual allegedly injured by a defamatory communication by a non-media defendant, the fault required on the part of the publisher is negligence, regardless of whether the statement is on a matter of public or private concern.[35] Negligence in this context "is a lack of reasonable belief in the truth of the statement giving rise to the

---

[35] 935 So. 2d 669, 680–81 (La. 2006) (holding that "the standard of negligence . . . is to be applied in cases . . . involving a private individual allegedly injured by a defamatory falsehood in a matter of public concern," which is the same "negligence standard of liability in actions by private individuals involving matters of private concern").

defamation."[36] Thus, to prevail in his defamation claim, Flanner "bears the burden of affirmatively proving (1) a false and defamatory statement; (2) an unprivileged publication to a third party; (3) negligence (as set forth in the Restatement (Second) of Torts § 580B) on the part of [JPMS]; and (4) resulting injury. If even one of these required elements is found lacking, the cause of action fails."[37]

A plaintiff's "recovery may be precluded if the defendant shows either that the statement was true, or that it was protected by a privilege, absolute or qualified."[38] JPMS asserts both defenses: (1) the statement made on the form was true, so it was not defamatory, and (2) even if the statement is found to be defamatory, it was privileged and made in good faith.

The Court first must examine whether Flanner pointed to competent summary judgment evidence creating a factual dispute as to whether JPMS's statement on the Form U5 was false and defamatory. Flanner argues the

---

[36] *Id.* at 680.

[37] *Id.* at 681 (citation omitted). Flanner argued JPMS's statement was defamatory *per se* and that this changed his burden of proof at the *prima facie* stage. Traditionally, Louisiana courts divided defamatory words into two categories: words defamatory *per se*, and words susceptible of a defamatory meaning. If words were defamatory *per se*, the elements of falsity, fault, and injury were presumed. However, in *Kennedy*, the Louisiana Supreme Court recognized that "the protections afforded by the First Amendment super[s]ede the common law presumptions of fault, falsity, and damages with respect to speech involving matters of public concern, at least insofar as media defendants are concerned." *Id.* at 677. Because the Louisiana Supreme Court in *Kennedy* found there is no reason to distinguish between media and non-media defendants when a matter of public concern is involved, the presumptions of falsity, malice, and injury available in the past when words were found to be defamatory *per se* no longer apply in defamation actions involving an issue of public concern. *See id.* at 677–78; *Starr v. Boudreaux*, 978 So.2d 384, 390 (La. App. 1 Cir. 2007). In this case, the statement in the Form U5 is a matter of public concern because the public has an interest in the regulation of the financial industry and its employees. *See Branton v. City of Dallas*, 272 F.3d 730, 739 (5th Cir. 2001). Thus, because this is a matter of public concern, the designation of defamatory *per se* and the attendant presumptions of falsity, malice, and injury do not apply, and Flanner must prove all elements of his defamation claim without the benefit of any presumptions.

[38] *Costello v. Hardy*, 864 So. 2d 129, 141 (La. 2004) (citations omitted).

district court erred in determining that he violated § 6.2 of JPMS's Code of Conduct. This Court agrees. Reasonable minds could differ on whether Flanner, in fact, violated JPMS's Code of Conduct. Flanner asserts his co-workers routinely lent similar amounts of money to other co-workers, who also were customers of Chase, without consequence. This raises a question as to what conduct JPMS considered to be a violation of § 6.2. Additionally, Flanner points to JPMS's revised Code of Conduct, which provides an example explaining that JPMS does not consider a $10.00 loan to be a violation of its rules because $10.00 is a nominal amount. If $10.00 is a nominal amount, a reasonable person might conclude $25.00 is nominal as well. JPMS admitted that the addition of this example to the Code of Conduct did not reflect a change in how it interprets § 6.2. Thus, this Court finds there is a fact question as to whether Flanner violated § 6.2. Even if Flanner violated § 6.2 of the JPMS Code of Conduct, a genuine factual dispute exists as to whether this rule is an *investment-related industry* standard of conduct, as indicated on the Form U5, or is merely JPMS's internal standard of conduct. Accordingly, JPMS is not entitled to summary judgment on the basis that the statement was true and thus a complete defense to Flanner's defamation claim.

Even if JPMS's statement on the Form U5 was false and defamatory, the Court must determine whether JPMS nevertheless is entitled to summary judgment because it had a conditional privilege and it did not know the falsity of the statement or have reckless disregard for the truth or falsity of the statement. None of the limited circumstances in which an absolute

privilege arises is applicable in this case.[39] Thus, to be privileged, JPMS must be entitled to a conditional, also called a qualified, privilege. The analysis for determining whether such a privilege exists requires two steps: "First, it must be determined whether the attending circumstances of a communication occasion a qualified privilege. The second step of the analysis is a determination of whether the privilege was abused, which requires that the grounds for abuse—malice or lack of good faith—be examined."[40] "The practical effect of the assertion of the conditional or qualified privilege is to rebut the plaintiff's . . . allegations of malice (or fault, which in this case amounts to negligence) and to place the burden of proof on the plaintiff to establish abuse of the privilege."[41] A conditional privilege is abused if the defendant "(a) knows the matter to be false, or (b) acts in reckless disregard as to its truth or falsity," meaning "the defendant was highly aware that the statements were probably false."[42]

Flanner concedes that JPMS is entitled to a conditional privilege but maintains the privilege was lost because the statement was not made in good faith. The Court agrees JPMS is entitled to a conditional privilege. FINRA

---

[39] *See Kennedy*, 935 So. 2d at 681 ("An absolute privilege exists in a limited number of situations, such as statements by judges and legislators in judicial and legislative proceedings.").

[40] *Id.* at 682 (citations omitted).

[41] *Id.* at 683 (citing *Smith v. Our Lady of the Lake Hospital, Inc.*, 639 So.2d 730, 746 (La. 1994)). The Louisiana Supreme Court has stated:

> [I]n a case such as this one, where a conditional privilege is found to exist, the negligence standard that is part of plaintiff's prima facie case is logically subsumed in the higher standard for proving knowing falsity or reckless disregard as to truth or falsity. Therefore, the negligence analysis drops out of the case, for if the plaintiff is incapable of proving the knowing falsity or reckless disregard as to truth or falsity necessary to overcome the privilege, it is of no consequence that he or she might be able to prove the lesser standard of negligence.

*Id.* at 687 n.19.

[42] *Id.* at 683–84, 88.

requires JPMS to complete the Form U5, and the statement in the Form U5 affects a sufficiently important public interest—the regulation of the financial industry and its employees.[43] Thus, to survive summary judgment Flanner must point to evidence creating a genuine dispute of material fact as to whether JPMS abused its conditional privilege. "[I]n a case such as this one, . . . the negligence standard that is part of [Flanner's] *prima facie* case is logically subsumed in the higher standard for proving knowing falsity or reckless disregard as to truth or falsity."[44]

The Louisiana Supreme Court has stated: "[D]etermining abuse of a conditional privilege or malice is generally a fact question for the jury unless only one conclusion can be drawn from the evidence."[45] This Court finds that more than one conclusion could be drawn from the evidence. Flanner raised genuine disputes of material fact as to how JPMS interpreted § 6.2 of its Code of Conduct and whether JPMS knew Flanner's actions did not violate an investment-related industry standard of conduct. Flanner also points out the reason for his termination given on the Form U5 was not the original reason cited by JPMS.[46] A reasonable trier of fact could conclude JPMS abused its conditional privilege by either knowing its statement that Flanner

---

[43] *See id.* at 682 (quoting Restatement (Second) of Torts) ("'An occasion makes a publication conditionally privileged if the circumstances induce a correct or reasonable belief that a) there is information that affects a sufficiently important public interest, and (b) the public interest requires the communication of the defamatory matter to a public officer or a private citizen who is authorized or privileged to take action if the defamatory matter is true.'").

[44] *Id.* at 687 n.19 (emphasis added).

[45] *Id.* at 682 (internal quotation marks and citation omitted).

[46] Flanner points to an email sent by a JPMS employee regarding his conduct and the appropriate disciplinary action. The email states: "It appears that [Flanner] violated [three] policies in the [Registered Representatives'] Manual."

No. 13-31132

violated an investment-related industry standard of conduct was false or acting in reckless disregard as to the statement's truth.[47]

Because there are material facts in genuine dispute both as to whether the statement was false and, if so, whether JPMS abused its conditional privilege, summary judgment is reversed as to Flanner's defamation claim.

## IV.

For the foregoing reasons, the judgment of the district court is AFFIRMED as to Flanner's FMLA and ADA claims, and REVERSED AND REMANDED for further proceedings consistent with this opinion as to Flanner's ADEA and defamation claims.

---

[47] *See id.*